## Schardein v. Harrison.

(Decided June 7, 1929.)

2

GROVER G. SALES and W. F. CLARKE, Jr., for appellant.

ALFRED SELLIGMAN, CHARLES G. MIDDLETON, HOWARD B. LEE and HARRIS W. COLEMAN for appellees.

ALLEN PREWITT and DODD & DODD, amici curiæ.

OPINION OF THE COURT BY CHIEF JUSTICE McCANDLESS—Affirming.

At the regular November, 1925, municipal election, Arthur A. Will was awarded the certificate of election as mayor of Louisville. A contest ensued and that election was declared void and the office of mayor adjudged to be vacant. See Taylor v. Nuetzel, 220 Ky. 510, 295 S. W. 873. In June, 1927, Joseph T. O'Neal was appointed to fill the vacancy in the office of mayor, and as such appointee held that office until November, 1927, at which time William B. Harrison was elected to fill the vacancy for the remainder of the term. Harrison is now a candidate for the Republican nomination for the same office in the 1929 primary. Claiming that under the provisions of section 160 of the Constitution, Harrison is ineligible to succeed himself as mayor (though it is conceded that he is in every other way qualified), plaintiff, a Republican voter and taxpayer in the city of Louisville, filed this action under the Declaratory Judgment Act to prevent Harrison's name from being placed upon the ballot as such candidate in the primary. Both judges of the Chancery division of the Jefferson circuit court heard the case and concurred in an opinion delivered by Chancellor Barrett in which he denied the relief sought and dismissed the petition. Plaintiff appeals.

A preliminary question is raised as to appellant's right to maintain this appeal, but it is without merit.

True, actions upon the part of candidates relating to the preparation of ballots in primary elections are restricted to the circuit court, which in relation thereto is made the court of last resort. See sections 1550-27, Ky. Statutes. But the provisions of that section do not abridge the right of voters and taxpayers to maintain such actions. See Hager v. Robinson, 154 Ky. 495, 157 S. W. 1138. A right that has since been enlarged under the comprehensive provisions of the Declaratory Judgment Act, section 639a of the Civil Code.

The sole question is as to the proper construction of section 160 of the Constitution which, so far as applicable, reads:

"The terms of office of Mayors . . . shall be four years, and until their successors shall be qualified. . . .

"No mayor . . . of any city of the first . . . class, after the expiration of the term of office to which he has been elected under this constitution, shall be eligible for the succeeding term."

By the provisions of section 167 of the Constitution, the first election for mayor under the new Constitution was held at the regular November, 1893, election and chronologically the November, 1925, election was the date for electing a mayor for the full term, and the inquiry is: When Harrison was elected in November, 1927, to fill the vacancy in the mayor's office, was this an *election to* the (a) term" within the meaning of the law?

1. Does the word "term" mean four years, or does it mean any other period of time for which one may be elected and hold the office? Differently stated, is the *"term" which disqualifies* a fixed and certain period, specified and designated in the Constitution, or is it an uncertain and movable period? The answer is found in the first paragraph quoted supra. "The term of office of mayor shall be four years." "Term" is thus identified and defined as a certain and fixed period of four years. It commences when the mayor is elected and inducted into office, and ends at the end of the four years for which he was elected. One or several persons may discharge the duties of the office during this period, but the term is not divided into smaller terms by the number of persons who may fill the office. It remains one and indivisible, and term follows term in successive cycles of four years each. Nor does it die with the incumbent. On the con-

4

trary, if the incumbent or the one elected to the office should resign, refuse to qualify, or be impeached or removed from office, the term would remain unbroken until the recurring election for that office. When so considered, the words, "No mayor, after the expiration of the term of office to which he has been elected . . . shall be eligible for the succeeding term," evidently refer to a term of four years, and mean that a mayor who is elected to a full term may not be re-elected within eight years.

In this respect it will be observed that aside from a reference in section 161 to be presently noticed, no mention is made of the "term" of mayor in any other part of the Constitution. Provision is made for filling vacancies in all elective offices, save those of Governor, Lieutenant Governor, and Members of the General Assembly in section 152. The words "vacancy" "unexpired term," and "part of term" are used repeatedly in that section. But nowhere does the word "term" appear without qualification. It provides: *"Vacancies* in all elective offices *shall be filled* by election or appointment, as follows: If the *unexpired term* will end at the next succeeding annual election at which either city, town, county, district or state officers are to be elected, the office *shall be filled* by appointment for the *remainder of the term*. If the *unexpired term* will not end at [such described election], . . . the *office shall be filled* by appointment until said election, and then *said vacancy* shall be filled by election for the *remainder of the term."* If three months do not intervene between the happening of the vacancy and the character of election named supra, the *office is to be filled* by appointment until the second succeeding election of that character, and then, *"if any part of the term remains unexpired, the office shall be filled by election until the regular time for the election of officers to fill said offices."* (Our italics.) This section demonstrates that the members of the convention had in mind a distinction between "a term of office" and "a part of a term" and understood how to use words to express this distinction. And the meticulous care they exercised in qualifying the word "term" wherever used therein indicates that they understood the word "term" to mean a full term of four years. It is also a significant fact that, though that section deals fully with the subject of elections to fill *vacancies*, it nowhere suggests that a person filling a vacancy is ineligible to

succeed himself. The same thought was carried into other provisions of the Constitution, thus:

Section 70 provides that the Governor "shall be elected for a term of four years." Section 71 provides, "He shall be ineligible for the succeeding four years after the expiration of the term for which he shall have been elected." Sections 82 and 83, relating to Lieutenant Governor, are similar. Sections 84 and 85 take care of vacancies in the office of Governor. It being specifically provided in section 85, "Whenever a vacancy shall occur in the office of governor *before the first two years of the term shall have expired, a new election for governor shall take place to fill such vacancy.*" Also as to other state officers section 91 provides for *"a term of four* years," and section 93 provides that these officers shall be ineligible for re-election "for the succeeding four years after the expiration of the term for which they shall have been elected."

The exact question here involved has not been passed upon by this court. But similar words appearing in other provisions of the Constitution have been considered, and the above definition of the word "term" adopted, though in some situations the application given it is not in entire harmony with the views above expressed. Thus, section 235 of the Constitution provides, "The salaries of public officers shall not be changed during the terms for which they were elected," and a similar provision in reference to city, county, town, and municipal officers is found in section 161 of the Constitution

In Bosworth v. Ellison, 148 Ky. 708, 147 S. W. 400, it appeared that one Morgan was elected jailer in 1909. The compensation of the office was increased by an act effective June, 1911. Afterwards Morgan resigned as jailer and Ellison was appointed to fill the vacancy. Ellison asserted a right to the increased compensation, on the theory that the increase was made during Morgan's term and before his incumbency began, and that therefore the compensation was not changed during his (Ellison's) term of office, nor the increase interdicted by section 161 of the Constitution. As to this the court said: ". . . It was manifestly the intention of these sections that all persons holding offices of the same character and class should receive during the terms for which they were elected uniform compensation or salary, whichever it might be. We think the words 'during his term of office' in section 161 should be given the same meaning

6

as the words 'during the term for which they, were elected' in section 235, and that the compensation mentioned in section 161 as well as the salary mentioned in section 235 refers to the full term of the office and not to the person who may be filling the office. . . . Ellison was appointed to fill out a part of Morgan's unexpired term. He had no term of office apart from the term of Morgan. He was merely occupying the place that Morgan under his election would have filled except for his resignation. A term of office when the period of the term is fixed . . . means the period designated by the Constitution or Statute. . . . When a person is appointed or elected to fill a vacancy in a term, he merely fills out the term of his predecessor. He does not enter on a new term of office, as does a person who is elected or appointed and takes the office at the beginning of the term as fixed by law. Within the meaning of section 161 of the Constitution, Ellison occupied precisely the same position that Morgan would if he had not resigned."

In Pinkston v. Watkins, 186 Ky. 365, 216 S. W. 852, a legislative act undertook to fix the term of police judges in cities of the third class at two years instead of four, as provided by section 160 of the Constitution. The court construed sections 160 and 167 together, and reached the conclusion that the word "term" as used therein means a full four-year term, and that the Legislature was without power to shorten the term. The same question was involved in Jones v. Sizemore, 117 Ky. 812, 79 S. W. 229, 25 Ky. Law Rep. 1957. In that case a sheriff elected in 1901, died in September, 1902. The vacancy occurred within three months of the succeeding annual election, and Jones was appointed to fill the vacancy until the 1903 election, at which time Sizemore was elected to fill the unexpired term. Jones claimed the right to exercise the duties of the office until the 1st of January following. In reference to this the court said: "The term of the office of sheriff is four years, no more and no less. The present term throughout the state began with the first Monday in January, 1902. The term had but one beginning, and will have but one ending, though there may be a dozen incumbents during the one term."

In Kratzer v. Com., 228 Ky. 684, 15 S. W. (2d) 473, we said: "As applied to office the word 'term' speaks with reference to the office itself, and not to the tenure of the incumbent. Barrett v. Duff, 114 Kan. 220, 217 P. 918. It means the fixed period of time during which an

officer or appointee is entitled to hold the office, perform its functions and enjoy its privileges and emoluments." See also 46 C. J. 963, and cases cited; Hoke v. Richie, 100 Ky. 66, 37 S. W. 266, 38 S. W. 132, 18 Ky. Law Rep. 546; Speed v. Worthington, 3 Metc. 207; Palmer v. Com., 122 Ky. 693, 92 S. W. 588, 29 Ky. Law Rep. 219. It thus appears that all the cases cited concur in defining the word "term" when used in relation to the named offices as being a full term or a period of four years, and that definition may be regarded as established.

2. The remaining question is: *Does the four-year term as so used refer to the office or to the officer?* We have seen that in Bosworth v. Ellison the words "during his term of office" appearing in section 161, and the words "during the term for which they were elected," are construed to refer to the office and not to the officer, or, as stated by the learned chancellor, "to mean the four year term of office, and not the four year term to which the individual had been elected." For this reason Ellison, who was filling a vacancy in the office of jailer, was denied an increase in the compensation made during his predecessor's incumbency because such increase was made during the four-year term of the office which was partly filled by each incumbent.

Appellant insists that a person may be elected "for" a term of office, but that he cannot be elected "to" a term of office, and that inasmuch as the word "to" and not "for" is used in the disqualifying phrase "after the expiration of the term of office to which he shall have been elected," the word "to" modifies office and not term, so that if the word "term" means a period of four years, the real meaning of the sentence is "after the expiration of the four year term of *the* office to which he has been elected." And as Harrison was elected to a particular term of four years he was ineligible to succeed himself, even though he served but two years.

He also insists that if a term is to be defined as four years, and construed to refer to the office and not to the officer as held in Bosworth v. Ellison, supra, Harrison is in the same situation as was Ellison, and, as Ellison was denied increased compensation because he was elected *to the four-year term of office,* by a parity of reasoning Harrison was elected to a four-year *term of office* and is ineligible for re-election. In reference to the first suggestion the chancellor aptly stated: "The answer to this somewhat refined argument is that if the makers of the

Constitution had intended to qualify the word 'office' they would have inserted the definite article 'the' before 'office' so that the phrase would have read: 'After the expiration of the term of *the* office to which he has been elected.' ''—an answer is which we concur.

However, the point raised by appellant, based on the ruling in the Ellison case, presents a more serious question. In Constitutions, a consistent terminology is to be expected, and if practicable a consistent definition of the words used should be given, as conflicting constructions of similar language appearing in different parts of the same instrument are confusing. Yet if a strained definition is rendered necessary to meet a particular situation, such definition is not thereby made conclusive in other situations to which it does not apply.

Sections 161 and 235 of the Constitution prohibit the compensation of an officer from being increased during his term. The indicative words being to "his term of office" (section 161), and "during the terms for which they were elected" (section 235). In the Ellison case the court held both sections to have the same meaning and to refer to a full four-year term. But in the light of the peculiar situation involved the court could not follow what we shall presently show to be the plain and reasonable meaning of these words, and at the same time effectuate the uniformity purpose of the provisions. And in view of the exigency of the situation emphasized the uniformity purpose, saying: "It is manifestly the intention of this section that all persons holding office of the same character and class shall receive during the terms for which they were elected uniform compensation or salary, whichever it might be. . . . Within the meaning of section 161 of the Constitution, Ellison occupied precisely the same position that Morgan would have if he had not resigned." The inference being that the construction there given was to have special application to these sections. No such situation is here presented. Section 160 declares certain incumbents ineligible for reelection regardless of their fitness otherwise. This qualification abridges the right of the people to select their own officials and is to be liberally construed in favor of eligibility, 46 C. J. p. 938. Also inasmuch as Constitutions are adopted by the people, a favorite canon of construction of such instruments is that the language used should "receive its plain and ordinarily understood meaning by the generality of the people." Crick v. Rash,

190 Ky. 832, 229 S. W. 63. So considered, the phrase "the term of office to which he has been elected" would naturally be understood to contemplate, not a part of a term, but a full term of four years as above defined. And also as suggested by the chancellor, "this would be understood to mean a four-year term to which the individual has been elected, not to the four year term for which all mayors are commonly elected." There is no manifest purpose to be effectuated by this provision which conflicts with the plain meaning of the words used, and in this respect it is to be distinguished from the situation involved in sections 161 and 235. True, it is argued there is such a purpose, i. e., to prevent the mayor from using his official power to perpetuate himself in office. But such purpose is not shown. On the contrary, mayors elected under the old Constitution were permitted to succeed themselves. And in cases arising under the new Constitution only mayors serving under an election are disqualified. Those serving under appointment are not disqualified. Yet such appointees have as much control of municipal affairs as do those who are duly elected. And in some instances an appointee to fill a vacancy may have a longer tenure of office than another such officer who is filling a vacancy by election, a matter that may be easily demonstrated by a perusal of that section. Certainly it was not intended to prefer appointees to electees in this particular. It is therefore apparent that the words, "The term of office to which he has been elected," in section 160, means a four-year term to which the individual has been elected, and not a general four-year term or cycle of office which may be filled by several incumbents.

3. Aside from the reasons for affirmance above set out, a decision of the case may be rested on the rule of contemporaneous construction as applied both to section 160 and to sections 82, 84, and 85, quoted above. The question has been acute in two mayorality races and one gubernatorial race. In January, 1896, Mr. Tyler, the then mayor of Louisville, died. Mr. Todd was appointed to fill the vacancy, and in the fall of that year was elected to fill out the unexpired term. At the expiration of that term and while exercising the duties of the office, he was again nominated as the Republican candidate and ran for that office for the succeeding term. In 1905 Mr. Barth received the certificate of election as mayor of Louisville. In a contest the election was set aside. The vacancy was

filled by appointment, and in the November, 1907, election Mr. Grinstead ran as the Republican nominee for that office for the succeeding term.

Governor Goebel died early in 1900. Lieutenant Governor Beckham assumed the duties of the office of Governor. In the fall of that year Governor Beckham was elected to fill the unexpired term and at the end of that term, in 1903, became a candidate for the succeeding full term. The governing authorities of the Democratic party refused to place his name upon the ballot as a candidate for the party nomination in the primary. In a mandamus proceeding in the circuit court they were required to do this. Appeal was taken to the Court of Appeals and the judgment there affirmed, though the court based its judgment upon other grounds and did not determine the question of eligibility. See Young v. Beckham, 115 Ky. 246, 72 S. W. 1092, 1094, 24 Ky. Law Rep. 2135. In the face of strenuous opposition, Governor Beckham received the party nomination in the primary and was elected over his Republican opponent in the November election. The question of eligibility was given great prominence in both the Beckham and Grinstead races. Most of the members of the constitutional convention were then living and many eminent lawyers of the state gave opinions, and the question was debated and evidently considered by the voters at the polls. However, after Mr. Beckham was elected no one ever questioned his right or title to the office, and in the subsequent Grinstead race the impression became general that the question was settled in the Beckham race, and that impression has since become a general conviction. The officers intrusted with the administration of the law and the people have thus given their sanction to this construction of the constitutional provision, and it has been acquiesced in without dispute for over 30 years. It would be unfortunate indeed if it was found necessary to overturn this construction, and we can conceive no instance in which the doctrine of contemporaneous construction could apply with more vigor or greater justice than in this.

The rule is thus stated in 12 C. J. p. 715: "Legislative or executive construction of constitutional provisions adopted and acted upon with the acquiescence of the people for many years are entitled to great weight with the courts and where not manifestly erroneous it will not be disturbed. The injustice that would inevitably result by the disturbing of such construction after a long period

of acquiescence therein, during which many rights will necessarily have been acquired, is a very strong argument against it."

We are unable to find any reason for declaring Mr. Harrison constitutionally ineligible to succeed himself, and the judgment of the chancellor is therefore affirmed.

Whole court sitting.