85 So.2d 852 (1956)
Richard W. ERVIN, as Attorney General of the State of Florida, Appellant,
v.
LeRoy COLLINS, Individually, R.A. Gray, as Secretary of State of the State of Florida, and Peaslee Streets, Appellees.
Supreme Court of Florida. En Banc.
March 5, 1956.
*853 Richard W. Ervin, Atty. Gen., and Howard S. Bailey, Asst. Atty. Gen., for appellant.
R.A. Gray, Secretary of State, Tallahassee, in pro. per.
Chas. S. Ausley, D. Fred McMullen, Ben C. Willis, Tallahassee, and William A. McRae, Jr., Bartow, for appellee LeRoy Collins, individually.
Damon Yerkes, Jacksonville, for appellee Peaslee Streets.
TERRELL, Justice.
This is a suit for declaratory decree instituted by Peaslee Streets against LeRoy Collins, individually, and as Governor, R.A. Gray, as Secretary of State, and Richard W. Ervin, as Attorney General. The complaint prays the court to take jurisdiction of the subject matter and the parties and determine whether or not Honorable LeRoy Collins having been elected Governor in 1954 for the unexpired term of Honorable Dan McCarty, deceased, is eligible to reelection for the four-year term beginning on the first Tuesday after the first Monday in January, 1957. A rash of pleadings and orders followed the complaint but we refrain from detailing them as this would serve no useful purpose. At final hearing the chancellor found and decreed that the election of Honorable LeRoy Collins in 1954 to complete the unexpired term of Honorable Dan McCarty, deceased, did *854 not render him ineligible to run for and be elected Governor of Florida for the four-year term commencing in January, 1957. The Attorney General has appealed from the declaratory decree which was entered January 11, 1956.
The primaries for which all state and county candidates are required to qualify will be held May 8 and 29. Candidates for Governor and other state officers must qualify during the period from noon, February 21, to noon, March 6, 1956. The authority of the Attorney General to prosecute this appeal is not challenged. It is admitted that the question of eligibility of Collins to run for Governor at this time is of vital concern to the electorate of Florida and is of such public interest that it should be settled without delay. Section 12 of the complaint so alleges and the same section of the answer admits this allegation to be true. It is also admitted, or not questioned, that the Attorney General, being the legal representative of the people, should bring this question to the attention of the court for final adjudication. Section 16.01, Florida Statutes, F.S.A., State ex rel. Moodie v. Bryan, 50 Fla. 293, 39 So. 929, and State ex rel. Landis v. S.H. Kress & Co., 115 Fla. 189, 155 So. 823, recognize the Attorney General as the chief law officer of the state and absent express legislative restriction to the contrary, may exercise his power and authority in the premises as the public interest may require. When the public interest is involved a more liberal rule governs who may appropriately bring an action of this kind and prosecute it to this court, if need be. Chapter 87, Florida Statutes 1953, Declaratory Judgments, F.S.A., and other extraordinary remedies govern the procedure. We think the case is properly here. Watson v. Claughton, 160 Fla. 217, 34 So.2d 243; Holland v. Watson, 153 Fla. 178, 14 So.2d 200; Reiter v. Wallgren, 28 Wash.2d 872, 184 P.2d 571; Capital Stages, Inc., v. State, 157 Miss. 576, 128 So. 759.
This is the first time we have been confronted with the main question presented by the appeal. It is our view that the answer to it is found in the interpretation of Sections 2, 3 and 19, Article IV of the Constitution, F.S.A., the said provisions being as follow:
"Sec. 2. The Governor shall be elected by the qualified electors of the State at the time and places of voting for members of the Legislature, and shall hold his office for four years from the time of his installation, but shall not be eligible for re-election to said office the next succeeding term; Provided, That the first election for Governor under this Constitution shall be had at the time and places of voting for members of the Legislature and State officers, A.D. 1888, and the term of office of the Governor then elected shall begin on the first Tuesday after the first Monday in January after his election.
"Sec. 3. No person shall be eligible to the office of Governor who is not a qualified elector, and who has not been ten years a citizen of the United States, and five years a citizen and resident of the State of Florida, next preceding the time of his election; Provided, that these limitations of time shall not apply to the President of the Senate or Speaker of the House of Representatives when, under this Constitution, the powers and duties of Governor shall devolve upon them.
* * * * * *
"Sec. 19. In case of the impeachment of the Governor, his removal from office, death, resignation or inability to discharge his official duties, the powers and duties of Governor shall devolve upon the President of the Senate for the residue of the term, or until the disability shall cease; and in case of the impeachment, removal from office, death, resignation or inability of the President of the Senate, the powers and duties of the office shall devolve upon the Speaker of the House of Representatives. But should there be a general election for members of the Legislature during such vacancy, *855 an election for Governor to fill the same shall be had at the same time."
We are called on to construe the terms of the Constitution, an instrument from the people, and we are to effectuate their purpose from the words employed in the document. We are not permitted to color it by the addition of words or the engrafting of our views as to how it should have been written. The point of our concern at this time has to do solely with the eligibility, election and term of Governor. As pointed out by the chancellor, it must be presumed that those who drafted the Constitution had a clear conception of the principles they intended to express, that they knew the English language and that they knew how to use it, that they gave careful consideration to the practical application of the Constitution and arranged its provisions in the order that would most accurately express their intention.
Guided by the principles stated in the preceding paragraph, let us examine the quoted provisions of the Constitution. Section 2 has to do with the election and term of Governor, fixes the beginning and length of his term and inhibits his election to "said office the next succeeding term". Section 19 has to do with succession to the office of Governor in case of impeachment, death, resignation or inability of the Governor to discharge the duties of the office. It provides for filling the vacancy caused by death of the incumbent by election in event there should be an election for members of the legislature during the vacancy.
Sections 2 and 19 are complementary in that Section 2 provides a four-year term and Section 19 provides for filling the office in the event of a vacancy from one of the extraordinary means enumerated therein. It is pertinent to point out that the makers of the Constitution imposed ineligibility for reelection only on those elected under Section 2, Article IV, and did not impose such a restriction on those who succeeded to the office for the unexpired term as provided by Section 19, Article IV. The makers of the Constitution not having seen fit to impose ineligibility for reelection to the office of Governor on those succeeding to the office for the causes stated in Section 19, Article IV, there is no authority for this court to impose such a restriction.
Section 3, Article IV, has to do with the eligibility of one who aspires to be Governor. He must be a qualified elector, five years a citizen of the state and ten years a citizen of the United States. By proviso it removes these limitations from the President of the Senate and the Speaker of the House if the powers and duties of Governor devolve upon them. It follows that the inhibition against succession to the office under Section 3, Article IV, the qualifications of Governor, do not apply to those succeeding under Section 19, Article IV, for the obvious reason that persons who may become President of the Senate and Speaker of the House and have the powers and duties of Governor devolve on them need only be qualified electors under Section 3, Article IV. The legislature has at no time, if indeed it has the power to do so, attempted to qualify said provisions of the fundamental law. Courts are law-interpreting and not law-making bodies and have no power to do so. The chancellor below, as did the Chancellor in Bryant v. Gray, Fla., 70 So.2d 581, decided February 23, 1954, reached this conclusion.
It is urged that the language, "shall not be eligible for re-election to said office the next succeeding term", was included in the Constitution to prevent the incumbent exercising the powers of the office of Governor to aid his election for another term. Much talk has been indulged about similar provisions which are found in other Constitutions but as to this case no such purpose is reflected by the Constitution or supported by those who suggest the charge. No such premise is established here and for this court to approve it unsupported would at least amount to charging the makers of the Constitution with being lax and careless.
The brief of appellant directs our attention to the fact that the provision of Section 2, Article IV, of the Constitution inhibiting the Governor from succeeding *856 himself after a four-year term was included in the first Constitution of 1838, that it was not included in the Constitutions of 1861, 1865 and 1868, but that it then reappeared in the Constitution of 1885. This fact is of historical interest but for reasons not necessary to discuss it is not pertinent or material here. Appellant's brief also suggests ambiguity of Section 2, Article IV. For the purpose of argument only, let it be assumed that said provision is ambiguous. The effect could do no more than cast a doubt on eligibility. If it amounted to this, under every accepted rule of interpretation, the doubt or ambiguity must be resolved in favor of eligibility. This court is committed to that doctrine. State ex rel. Fraser v. Gay, 158 Fla. 465, 28 So.2d 901, 904; State ex rel. West v. Gray, Fla., 70 So.2d 471. It may be that the insertion of a pronoun or connectives in the appropriate place would clarify Section 2, Article IV, but even so, we see no escape from the interpretation imposed on it so we conclude that the assault for ambiguity is without merit. To hold one ineligible to run for office where neither the Constitution nor the statute does so in express terms is contrary to every democratic precept.
Both parties to this cause invoke the aid of Fitzpatrick v. McAlister, 121 Okla. 83, 248 P. 569, and Schardein v. Harrison, 230 Ky. 1, 18 S.W.2d 316, to support their contention. Schardein v. Harrison had to do with a contest for mayor of Louisville. The Constitution of Kentucky, § 160 provided: "The terms of office of Mayors * * * shall be four years, and until their successors shall be qualified * * *. No Mayor * * * of any city of the first * * * class, after the expiration of the term of office to which he has been elected under this Constitution, shall be eligible for the succeeding term."
In 1925 Arthur A. Will was elected Mayor of Louisville but his election was declared void and the office vacant. In June, 1927, O'Neal was appointed to fill the vacancy. He held the office under such appointment until November, 1927, when Harrison was elected to the unexpired term. In 1929, Harrison was a candidate for the full term. Plaintiff instituted suit to have Harrison declared ineligible for the office. The Supreme Court ruled Harrison eligible to run for the full term on the ground that the constitutional inhibition referred solely to one elected for a full four-year term. The court further held that neither the appointed mayor nor the mayor elected to fill the vacancy for the unexpired term was disqualified to run for a full term of four years. The Schardein case is pertinent and supports the conclusion reached here because of the similarity of the Kentucky Constitution to the Florida Constitution, Section 2, Article IV, in that both apply only to one elected to a four-year term. Both Constitutions treat a fixed term of four years and as the Kentucky court said, the fact that several persons may discharge the duties of the office during the four-year period, does not separate it into smaller terms or periods. In State ex rel. West v. Gray, supra, this court recognized the interpretation we impose in Section 2, Article IV, in re disability of a Governor for reelection who holds office for a four-year term.
In Fitzpatrick v. McAlister, supra, the point for determination was whether or not Trapp, the Lieutenant Governor who succeeded Walton, the impeached Governor, was eligible to run for and fill the office of Governor for the succeeding term. If the pertinent provisions of the Florida and Oklahoma Constitutions had been similar, we might have had a case in point. The controlling provision of the Oklahoma Constitution, Section 4, Article VI, provides that, "The Governor, Secretary of State, State Auditor, and State Treasurer shall not be eligible immediately to succeed themselves."
The majority opinion of the Supreme Court of Oklahoma held in effect that when the Lieutenant Governor succeeded to the office of Governor, he was clothed with all the powers and duties of that office and that the inhibition against succession quoted above applied to him. Section 4, Article VI, of the Oklahoma Constitution is so different from Section 2, Article IV, of the Florida Constitution that we do not think *857 the Oklahoma case is controlling. The Governor of Oklahoma, regardless of the term for which he is serving, cannot succeed himself. In this holding we do not overlook Sections 15 and 16, Article VI and other provisions of the Oklahoma Constitution discussed in the opinion of that court but we do not think they are in point. In this we have not overlooked the contention of appellant in both his main and reply brief as to similarity of the Oklahoma case to the case at bar, but the terms of the applicable provisions of the Oklahoma Constitution and the approach of the court to it are not considered applicable to the case before us.
In Black v. Pate, 130 Ala. 514, 30 So. 434, the Supreme Court of Alabama applied the same rule of interpretation to the question of succession to office that we apply here. Section 26, Article V, Constitution of Alabama 1875 provides: "A Sheriff shall be elected in each county by the qualified electors thereof, who shall hold his office for the term of four years, unless sooner removed, and shall be ineligible to such office as his own successor". Said the Supreme Court in construing this provision, the person made ineligible is designated by the pronoun "who" which can have relation to no other than the person previously mentioned, viz., the sheriff elected by the qualified electors for the term of four years. Without an unwarranted extension of its terms, this provision cannot be made to include, or to render ineligible to succeed himself, one who has held the sheriff's office only by appointment for a fractional term.
McGinnis v. Cossar, 230 Ky. 213, 18 S.W.2d 988, 989, follows the same reasoning as Black v. Pate. The pertinent part of the Constitution of Kentucky, § 99 provides, "* * * but thereafter no Sheriff shall be eligible to re-election or to act as deputy for the succeeding term." Said the Supreme Court of Kentucky, the contention that the words, "No sheriff shall be eligible to re-election or to act as deputy for the succeeding term," limit and qualify the words "to act as deputy," and not the word "reelection" is unsound. The words "for the succeeding term" plainly limit and qualify the word "reelection," as well as the words "to act as deputy." Any other construction would disqualify a sheriff who has filled the office for a full term forever thereafter. Sheriffs serving under appointment are not disqualified and, as said in Schardein v. Harrison, supra [230 Ky. 1, 18 S.W.2d 319], "Certainly it was not intended to prefer appointees to electees in this particular." The words "succeeding term" imply a like term immediately preceding it. Wherever the word "term" appears in Section 99 of the Constitution, it is a full term that is referred to. "If the members of the constitutional convention had intended to render ineligible to succeed himself one who has held the sheriff's office for a fractional term, apt language could have been used to express such intention, and undoubtedly one who has held the office by appointment for a fragment of a term likewise would have been disqualified from succeeding himself, since the same reason for disqualification would apply to him as to one who had been elected for a fragment of a term. Section 99, specifically provided that sheriffs elected in 1892 for the two-year term should be eligible to re-election in 1894, and this indicates an intention that disqualification should apply only to sheriffs elected for a full four-year term." Bozeman v. Laird, 91 Miss. 719, 45 So. 722, under like circumstances and constitutional provisions applied the same rule of interpretation where the officer had served a fragment (one and one-half years) of a four-year term.
McGinnis v. Cossar, supra, concludes with the general rule that statutes and constitutions imposing restrictions upon the right of a person to hold office should receive a liberal construction in favor of the right of the people to exercise freedom of choice in the selection of officers. The only conclusion that one can draw from Black v. Pate, McGinnis v. Cossar, Schardein v. Harrison, and Bozeman v. Laird, supra, is that officers who have been elected to a full four-year term are ineligible for election to the succeeding term but that officers elected or appointed to serve the balance or fragment of an unexpired term are *858 eligible for reelection to the succeeding term.
It would seem that the interpretation we have imposed on Sections 2, 3 and 19, Article IV of the Constitution, supported by Black v. Pate, McGinnis v. Cossar, Schardein v. Harrison and Bozeman v. Laird would conclude the main point in the case, but as heretofore pointed out, if there are ambiguities in Section 2, Article IV, or other applicable provisions of the Constitution, as asserted by the Attorney General under every known rule of constitutional interpretation such ambiguities should be construed in favor of Collins' eligibility to run. No one, not even appellant relying on ambiguity, has attempted to overcome this rule and since it is the people's Constitution we are interpreting, what could be more appropriate than to give them an opportunity to impose their views and say what they meant.
Stripped of surplus verbiage, appellant's contention amounts to a "short cut" to amend the Constitution. He proposes to transpose the inhibition in Section 2, Article IV, "shall not be eligible for re-election to said office the next succeeding term", to Section 19, Article IV, and effectuate it as to that section as if the makers of the Constitution did so when they made it. There are good reasons for not imposing this inhibition on one who succeeds to the office of Governor under Section 19, Article IV. The period for which he succeeds may be for a few weeks or months, depending on when the Governor dies or is for other reasons disqualified to serve. In this case the vacancy occurred about nine months after the Governor was inaugurated; the duties of the office then devolved on the President of the Senate until a general election intervened when Honorable LeRoy Collins was elected for the unexpired term of approximately two years. In other words, three men exercised the powers of Governor during the four-year term for which Honorable Dan McCarty was elected. The Constitution is silent as to any inhibitions on those who completed the unexpired term of Honorable Dan McCarty. It would be ridiculous to impose such inhibitions on them for the reasons they are said to have been imposed by Section 2, there being no provision in Section 19 authorizing it. The method by which appellant proposes to amend the Constitution to speak where it is now silent does not comply with the pattern provided by Section 1, Article XVII, but if it did, it should be addressed to the legislature instead of to this court. For this and other reasons two able chancellors have rejected it and we feel impelled to follow their lead.
Honorable LeRoy Collins was elected to the unexpired term of Governor created by the death of Honorable Dan McCarty. Such election was pursuant to Section 19, Article IV, of the Constitution which has no provision, express or implied, against his running for the full term beginning in January, 1957. Even if there were doubts or ambiguities as to his eligibility, they should be resolved in favor of a free expression of the people in relation to the challenged provision of the Constitution. It is the sovereign right of the people to select their own officers and the rule is against imposing disqualifications to run. The lexicon of democracy condemns all attempts to restrict one's right to run for office. The Supreme Court of the United States has approved the support of fundamental questions of law with sound democratic precepts. Florida is committed to the general rule in this country that the right to hold office is a valuable one and should not be abridged except for unusual reason or by plain provision of law. We have no such provision and to interpolate one into the Constitution is contrary to every rule of constitutional interpretation. It is beyond the power of this or any court to do.
The judgment appealed from is therefore affirmed.
Affirmed.
*859 THORNAL and O'CONNELL, JJ., concur.
THOMAS, J., concurs specially.
DREW, C.J., and HOBSON and BUFORD, JJ., concur specially in judgment of affirmance.
THOMAS, Justice (concurring specially).
I concur in the opinion of TERRELL, J.
But for emphasis I wish to state on my own account that two factors to my mind tip the scales of justice in favor of the eligibility of the present governor. One is the rule that even if uncertainty and ambiguity are present, as the attorney general states in his brief, construction should favor eligibility if that can be reasonably done in carrying out the intention of the framers, and the other is the result of that rule, namely, that if his eligibility is sanctioned, the electorate will have a broader field from which to choose an executive.
HOBSON, Justice (concurring specially in judgment of affirmance).
Although I entertain considerable doubt concerning both the propriety of this appeal and the right of the plaintiff below to maintain this action, see my special concurring opinion in State ex rel. West v. Gray, Fla., 74 So.2d 114, 120-122, I accept without further comment the will of the majority upon this aspect of the case.
Most respectfully, however, I disagree with that portion of my revered brother's opinion wherein it is stated in substance that our constitution is clear and permits of but one logical and reasonable construction, to wit: that the framers did not intend the prohibition contained in Section 2, Article IV to apply to a person who might be elected to the office of Governor for less than the full four-year term prescribed in and by the same section. In my opinion it is at least equally logical and reasonable to conclude that the framers of our constitution intended the prohibition against "reelection to said office [of Governor] the next succeeding term" (italics supplied) to apply to every person once elected to the office of Governor because there can be no reelection to office unless the one so reelected has theretofore been elected to such office. Moreover no one who might perform with constitutional sanction the duties of the office of Governor is in truth and fact "the Governor" unless he be elected by the people to such office. Anyone who performs the duties imposed upon a Governor by organic law other than a person elected by the people to such office does so by virtue of holding another constitutionally recognized office. The prohibition of Section 2 of Article IV is specifically directed against "the Governor". It may readily be argued that there was no real necessity for, or reason to, repeat such prohibition in Section 19, Article IV.
In a case such as this wherein the eligibility of a citizen of this State to seek election to, and if elected, to hold the high office of Chief Magistrate is in question, the law, as well as the fundamental concept which gave birth to our form of government and which inheres therein, directs that we not guess or merely make a choice between two or more reasonable and logical constructions of the constitution's provisions but, on the contrary, that we allow the doubt created by the lack of certain clarity of such provisions to be resolved by "the voice of the people". Vox populi is the very essence of our democracy.
Certainly doubt does exist as to the true intent of the framers with reference to the question presented herein. At least two reasonable and logical constructions are deducible from a studied consideration of the pertinent provisions of our constitution. Moreover the fact that such doubt is present is made more certain when we consider the opinions of courts in foreign jurisdictions wherein a problem very similar to the one presented herein arose. We learn from briefs of counsel that courts of last resort in two sister states have been faced with *860 an almost identical question and those courts reached diametrically opposite conclusions. See Fitzpatrick v. McAlister, 121 Okla. 83, 248 P. 569 and Schardein v. Harrison, 230 Ky. 1, 18 S.W.2d 316.
In the case of State ex rel. West v. Gray, Fla., supra, I adopted the same view which I have expressed herein. Eligibility was not challenged in that case upon the same basis as here but in the West case as in this case, at least in my opinion, doubt existed as to the eligibility of a citizen to seek and, if chosen, to hold the highest office within the gift of the people of Florida. I quote from the special concurring opinion prepared and filed by me in the case of State ex rel. West v. Gray, supra [74 So.2d 123]:
"With the growth of our institutions the field of public law has today become a complex science, and in applying its principles to new situations the danger of falling into error, always to be considered in the operation of fallible human agencies, is aggravated by the possibility of far-reaching consequences. In a case such as this, where the question sought to be raised is whether or not a candidate for the highest office the State can bestow is to be barred at the outset from submitting his qualifications for the traditional and sovereign expression of the public forum, it is easy to sense the direction in which the greater danger lies."
For the foregoing reasons I concur in the judgment of affirmance.
BUFORD, J., concurs.
DREW, Chief Justice (concurring specially in judgment of affirmance).
I agree with all that is said in the foregoing opinion of Justice HOBSON except the first paragraph thereof. It is my view that not only is this matter properly before us on the appeal of the Attorney General but that it was his clear duty, having been made a party in the lower court, to prosecute a matter of this importance to a conclusion in this Court.