234 So.2d 651 (1970)
The STATE of Florida, Appellant,
v.
COUNTY OF DADE, a Political Subdivision of the State of Florida, Appellee.
No. 38981.
Supreme Court of Florida.
February 25, 1970.
Rehearing Denied April 22, 1970.
Richard E. Gerstein, State's Atty., and Jack R. Blumenfeld, Asst. State's Atty., for appellant.
Thomas C. Britton, County Atty., and Thomas P. Abbott, Asst. County Atty., for appellee.
BOYD, Justice.
This cause is before us on appeal from the Order of the Circuit Court of Dade County, validating special county building certificates of indebtedness in the amount of $7,600,000.00 for the purchase and improvement of facilities to be used as a youth hall and juvenile court complex. Appellant and Appellee agree that the questions before us are:
1. Will the issuance of the youth hall and juvenile court complex certificates *652 of indebtedness, without approval at a freeholders' election, violate Article VII, Section 12, of the Florida Constitution?
2. Is the levy of the special building tax for the payment of the youth hall and juvenile court complex certificates of indebtedness excluded from, and not subject to, the millage limitations contained in Article VII, Section 9, subsection (b), of the Florida Constitution of 1968?
On June 18, 1969, the Board of Commissioners of Dade County, Florida, enacted Ordinance 69-34 entitled:
"An Ordinance authorizing the construction of a new youth hall and juvenile court complex, the issuance at one time or from time to time of not exceeding $7,600,000 special county building certificates of indebtedness for payment of the cost thereof, and the levy of a building tax not exceeding one-fourth of a mill annually for ten consecutive years for the payment of such certificates of indebtedness and the interest thereon." (e.s.)
Florida Statute § 135.01, F.S.A., relied on as authority for the issuance of the certificates of indebtedness, provides:
"Whenever any board of county commissioners shall deem it necessary to erect or repair any courthouse, jail, or other county building, erect an addition or additions to any courthouse, jail or other county building, they shall give notice for thirty days in some newspaper published in said county, or in some newspaper published in the judicial circuit, if there be none published in the county, that at the next regular meeting of the board after the publication of the said notice, such question or questions, will be acted upon by said board. If, at said meeting, a majority of said board shall determine that it is necessary to erect, repair, or build addition or additions to, such building or buildings, they may levy a building tax not exceeding five mills per annum, for not more than thirty consecutive years in lieu of all other county building tax. The tax levied shall be assessed and collected at the same time and in the same manner as other state and county taxes are levied and collected."
Prior to January 7, 1969, the effective date of the new Constitution, this Court, in a number of cases, upheld the financing of essential government requirements under Florida Statute § 135.01, and its predecessors, without freeholder vote. These cases[1] are relied on by appellee.
The question is whether Section 12 of Article VII of the new Constitution, F.S.A., has superseded our prior decisions and rendered Florida Statute § 135.01, F.S.A. invalid.
Section 12 of Article VII, of the Constitution provides as follows:
"Local bonds.  Counties, school districts, municipalities, special districts and local governmental bodies with taxing powers may issue bonds, certificates of indebtedness or any form of tax anticipation certificates, payable from ad valorem taxation and maturing more than twelve months after issuance only:
"(a) to finance or refinance capital projects authorized by law and only when approved by vote of the electors who are owners of freeholds therein not wholly exempt from taxation; or
"(b) to refund outstanding bonds and interest and redemption premium *653 thereon at a lower net average interest cost rate."
(e.s.)
Appellee contends that Section 12 of Article VII, of the new Constitution does not differ in any material way from former Section 6 of Article IX of the Constitution of 1885 and should be construed as was the prior provision to allow the certificates of indebtedness under consideration.
The prior constitutional provision effective from 1930 until January 7, 1969 provided:
"The Legislature shall have power to provide for issuing State bonds only for the purpose of repelling invasion or suppressing insurrection, and the Counties, Districts, or Municipalities of the State of Florida shall have power to issue bonds only after the same shall have been approved by a majority of the votes cast in an election in which a majority of the freeholders who are qualified electors residing in such Counties, Districts, or Municipalities shall participate, to be held in the manner to be prescribed by law; but the provisions of this act shall not apply to the refunding of bonds issued exclusively for the purpose of refunding of the bonds or the interest thereon of such Counties, Districts, or Municipalities."
We are unable to agree with appellee's contention that "except for refinements of language" the old and new sections do not differ as related to the instant case. The new Constitution expressly provides for the issuance of certificates of indebtedness or any form of tax anticipation certificates "only to finance capital projects authorized by law and only when approved by vote of the electors who are owners of freeholds therein not wholly exempt from taxation. * * *" The prior Constitution did not mention certificates of indebtedness or tax anticipation certificates, but referred only to bonds requiring approval of freeholders.
The present Constitution is clearly more restrictive and expresses the will of the people that financial arrangements of the type formerly upheld in the Tapers v. Pichard line of cases be no longer permitted.[2] The language of Section 12, Article VII is plain. In Ervin v. Collins[3] we held:
"We are called on to construe the terms of the Constitution, an instrument from the people, and we are to effectuate their purpose from the words employed in the document. We are not permitted to color it by the addition of words or the engrafting of our views as to how it should have been written. * * * As pointed out by the chancellor, it must be presumed that those who drafted the Constitution had a clear conception of the principles they intended to express, that they knew the English language and that they knew how to use it, that they gave careful consideration to the practical application of the Constitution and arranged its provisions in the order that would most accurately express their intention."
We hold, therefore, that Florida Statute § 135.01 is invalid and the certificates of indebtedness proposed to be issued thereunder cannot be issued without approval of freeholders as provided by Section 12 of Article VII, Florida Constitution of 1968.
Appellant contends that the levy of the special building tax to pay the certificates of indebtedness is subject to the millage limitations of Section 9(b), Article VII of the new Constitution.[4] This Court *654 has recently had occasion to consider the provision in question in State ex rel. Dade County v. Dickinson.[5] Since the certificates of indebtedness here under consideration can only be issued upon approval of the freeholders, the tax levied to pay the certificates is in addition to, and not included within, the 10 mills allowed for county purposes under Section 9(b), of Article VII.
This Court is mindful of the urgent need for expanded juvenile court and youth hall facilities in Dade County. This need is clearly established in the record. We are not, however, permitted the luxury of an elastic interpretation of a clear constitutional provision.
Accordingly, the final decree validating the bonds is reversed.
It is so ordered.
DREW, THORNAL, CARLTON and ADKINS, JJ., concur.
ERVIN, C.J., dissents with opinion.
ROBERTS, J., dissents with opinion.
ERVIN, Chief Justice (dissenting):
I think we should affirm the Circuit Court's validation of the special Dade County building certificates of indebtedness in the amount of $7,600,000 for the acquisition of necessary land and improvements thereon of facilities to be used as a Youth Hall and Juvenile Complex Center.
The designation, "Youth Hall and Juvenile Complex Center," is in reality a more sophisticated name for the buildings to house the Dade County Juvenile Court and to detain and imprison the County's juvenile offenders for their discipline, detention and rehabilitation separate from the County's adult offenders.
These buildings come squarely within the genre of courthouse buildings and jails as contemplated by F.S. Section 135.01, F.S.A. Compare State v. County of Palm Beach, Fla. 1956, 89 So.2d 607.
The County has levied for the financing of these facilities, through the issuance of said certificates of indebtedness, a special ad valorem millage tax not exceeding one fourth of one mill on the dollar for a period of ten consecutive years beginning in the fiscal year 1970-71, pursuant to F.S. Section 135.01, F.S.A.
Appellant contends that for the said certificates to be valid they must be approved at a freeholders' election pursuant to Section 12 of Article VII of the revised 1968 Florida Constitution, which approval it also contends is necessary to satisfy millage restrictions of Section 9 of Article VII of the Constitution which would otherwise apply.
Appellee contends the certificates are of a class of obligations which do not fall within the restrictions of said Sections 9 and 12 of Article VII, since such restrictions are amenable to the judicial constructions given similar provisions in the 1885 Constitution. See e.g., Tapers v. Pichard, 1939, 124 Fla. 549, 169 So. 39. Compare Hayek v. Lee County, 231 So.2d 214, opinion filed January 29, 1970.
It is not necessary to decide the precise question posed by Appellee's contention as will hereinafter appear.
*655 Sections 9 and 12, Article VII, when considered in connection with pertinent provisions of the Schedule of the revised Constitution (Article XII), do not require a favorable referendum vote of the County freeholders as a condition precedent to the valid issue of said certificates.
Said Sections 9 and 12 of Article VII, insofar as the continued efficacy of said Section 135.01 is concerned, are subject to the supervening provisions of the schedule article, Article XII of the revised Constitution.
Section 2 of Article XII provides: "Tax millages authorized in counties, municipalities and special districts, on the date this revision becomes effective, may be continued until reduced by law." (Emphasis added.)
Section 17 of Article XII provides: "This schedule is designed to effect the orderly transition of government from the Constitution of 1885, as amended, to this revision and shall control in all cases of conflict with any part of Article I through IV, VII, and IX through XI herein." (Emphasis added.)
Sections 2 and 17 of Article XII appear to have the express purpose of keeping alive Section 135.01, among other laws, until it is modified or repealed by the Legislature. In keeping the statute alive, they also necessarily bring forward as a concomitant the judicial constructions given it under the 1885 Constitution.
Contemporaneous construction by the Legislature of these transitional provisions clearly supports the proposition just stated.
During the germinating period when the 1968 revision of the Florida Constitution was being ripened for submission, the 1967 Legislature was enacting into law to take effect on January 1, 1968, approximately a year prior to the time the 1968 Constitution became effective, Chapter 67-395, which is brought forward in the Florida Statutes as F.S. Sections 193.321-193.327, F.S.A., inclusive.
Section 193.321 expressly provides that levies for special benefits and debt service therefor may be in excess of ten mills on the dollar of assessed value. The stated exception in Section 193.321 which lends importance to the present case is embraced by the language, "except for special benefits and debt service on obligations issued in connection therewith." Section 135.01 may be resorted to by a county for making a levy if need be, in excess of the ten-mill limit for such special governmental facilities as a courthouse or jail.
Prior to the enactment of Section 193.321 et seq., the only statutory limitations imposed on county millage rates were those prescribed in F.S. Section 193.32, F.S.A. Sections 193.32(1) (a) through (f) designate the maximum millages that could be levied specifically for various county funds. Section 193.32(2) provides "* * * nothing herein shall be construed to prohibit the levy of reasonable taxes for such other county purposes as are specifically authorized by law." Thus, prior to the enactment of Section 193.321 et seq., the existing statutory millage limitations envisioned by Section 193.32 did not operate to restrain or prohibit the levying of reasonable ad valorem taxes for such county purposes as county courthouse and jail buildings, e.g., F.S. Section 135.01, F.S.A., and county libraries, Section 150.08.
A close study of Sections 193.321 et seq., and their intended purposes, coupled with the saving clause provision contained in Section 2, Article XII, evidences a clear purpose to relax the limitations imposed in the new revision by extending a grace period during which certain pre-existing authorized tax millage acts would continue until such time as the Legislature, in the interest of effecting an orderly transition, sees fit to bring about the reduction or demise of such authorized millages.
Section 2, Article XII, speaks in terms of authorized tax millages and not existing millage rates or millages actually levied and in effect for a current fiscal year. *656 The phrase, "millages authorized," considered in conjunction with the phrase, "reduced by law," logically refers to those maximum millages allowable under legislative enactments in existence at the operational date of the new Constitution and is not limited merely to levied millages in effect at that time. In this respect compare the terminology in Section 2, Article XII, with the provisions of F.S. Section 193.324, F.S.A. (tax millages authorized as compared to rate of taxation).
F.S. Section 193.327, F.S.A. and Section 2, Article XII appear to be indicative of the prevailing thinking among lawmakers and revisors of the Constitution that the millage limitations imposed by the Constitution of 1968 were not intended as self-executing to the extent of reducing in aggregate to ten mills at one swoop, in the absence of approving freeholders' referendums, all existing special statutory authorizations for the imposition of millages in excess of the constitutional limitations, but were intended simply as objectives to be reached as soon as fiscally feasible, i.e., if and when replacement revenues to reduce existing authorized millages were provided pursuant to which the Legislature could reduce such local unit authorized millages accordingly. F.S. Section 193.327, F.S.A., is highly persuasive as to these reciprocal goals, since this statute and Sections 193.321-193.326 were products of the same legislative membership that fashioned the 1968 constitutional revision.
Section 2 of Article XII, in speaking of millages authorized in local units on the date of the revision's effectiveness and to continue until reduced by law, logically refers to maximum millage authorizations in existing statutes that can be imposed in such units and not to current millage levies for the fiscal year 1968-1969 (the period in which the revised Constitution became effective) imposed by local taxing authorities of such units pursuant to such laws. If this were not so, all special millage levies authorized by law for county purposes not actually needed to be levied in full at the moment the revision became effective under public programs already underway and contemplated to be continued into the future would be subject to reduction (absent an approving freeholders' referendum) by the impact of the revision itself and not by an act of a future Legislature. In some years little or no millage levies may be necessary under certain existing special county millage authorization acts, but in other years revenue needs may increase; for example, capital outlays may be needed, requiring millage increases pursuant to the maximum millage authorizations of such acts. Section 2 of Article XII does not intend the 1968 Constitution to abruptly interfere with these existing millage authorizations absent curtailment by subsequent legislation.
It is clear the revisors intended by this provision in the Schedule that the Legislature should retain the power to re-examine and determine whether in the future any of the numerous existing laws authorizing ad valorem levies for special county purposes should be reduced or repealed piecemeal, rather than such authorizations being automatically reduced or modified by operation of the revision itself. Great care was exercised by the revisors not to reduce special statute authorizations of tax levies by a blanket operation of the revision.
In the future, due to aggregate ad valorem millage situations in many local units, it may indeed be necessary that many newly enacted statutes authorizing tax millage levies for local purposes therein be approved by a referendum vote of the unit's affected freeholders, but Section 2 of Article XII does not intend (without future legislative action) that millage authorization acts existing at the time the Revised Constitution went into effect automatically be made the subject of local referendums for their continued full operational effect.
Section 193.327 expresses a legislative intent that local millage levies for all operational purposes shall not exceed twenty mills, and that replacement revenues "for *657 the operation of local governmental bodies by the fiscal year 1970-71, or as soon as thereafter provided" (emphasis added) are intended to be provided by the Legislature in order that local millages will not be oppressive or exceed an aggregate of twenty mills. However, Section 193.327, relating to millage limitations for general county operational purposes, similarly as did Section 193.32, does not purport to limit Section 135.01, designed to provide capital outlay construction funds beyond the fiscal year for courthouses and jails due to the exception therefor in related Section 193.321.
It appears from these statutes contemporaneously considered and enacted by the Legislature, along with the submission of the revised Constitution, there was no intention to modify or repeal Section 135.01 which traditionally and historically has been resorted to for the very limited purpose of providing funds for essential governmental facilities, i.e., courthouses or jails (under the rule ejusdem generis only courthouses or jails are contemplated by Section 135.01). If Section 135.01 is repealed, a similar subsequent act would not have the benefit of the saving clause provisions of Section 2, Article VII, but would be subject to Sections 9 and 12 of Article VII. Of course, however, any levies or spreads of annual tax millage pursuant to the authority of Section 135.01 made prior to any modification or repeal of it would be valid and any obligations incurred in contemplation thereof could not be impaired. It should be noted that only levies made pursuant to Section 135.01 would fall in the category of debt service levies and only commitments thereunder for courthouse or jail construction could not be impaired. Levies under other millage authorizations would not be in similar status.
The majority opinion of this Court in State ex rel. Dade County v. Dickinson, filed November 3, 1969, is not controlling in this case since it does not reach the precise issue presented in this situation relating to the subject of capital outlay for courthouse or jails, or foreclose consideration concerning whether Section 135.01 remains in full effect as contemplated under the 1885 Constitution until it is repealed.
Our opinion in Mize v. County of Seminole, Fla., 229 So.2d 841, considered the validity of a resolution of the County Commissioners of Seminole County adopted prior to the Revised Constitution providing for a courthouse construction levy pursuant to Section 135.01. It was not necessary to that opinion and we did not hold therein that such a levy made after the Revised Constitution became effective would only be valid if approved at a referendum of the freeholders of the County. To the contrary, we referred to Section 2 of Article XII of the Revised Constitution and indicated that it preserved all rights of the County Commissioners at the time the courthouse bonds were validated by the Circuit Court, which validation occurred prior to the Revised Constitution becoming effective. Logically, this reasoning applies with equal force as to any millage levies made pursuant to Section 135.01 after the revision became effective because Section 2 of Article XII continues such authorizations of millages as, e.g., is provided by Section 135.01 until reduced or repealed by law.
We should be careful during the period of transition from the old to the new constitution to fully honor the saving clause provisions of the schedule article and avoid undue haste in disrupting traditional procedures which easily could result in fiscal crises and governmental breakdowns. Time and opportunity should be afforded the Legislature to make revenue adjustments for local units and to provide an orderly transition from ad valorem revenues to replacement revenues. We should avoid contretemps that can arise from sweeping conclusions that provisions in the revised Constitution that are similar to those in the 1885 Constitution are not subject to former judicial constructions given similar provisions in the 1885 Constitution. *658 Compare Hayek v. Lee County, 231 So.2d 214, opinion filed January 29, 1970.
The long line of cases beginning with Tapers v. Pichard, supra, and continuing with Posey v. Wakulla County (1941), 148 Fla. 115, 3 So.2d 799; State v. Lafayette County (1952), 55 So.2d 799; State v. Sumter County (1952), 60 So.2d 529; State v. St. Johns County (Fla. 1952), 60 So.2d 530; State v. County of Palm Beach (Fla. 1956), 89 So.2d 607; State v. County of Dade (Fla. 1957), 92 So.2d 186; State v. County of Santa Rosa (Fla. 1958), 105 So.2d 365; State v. Lee County (Fla. 1960), 121 So.2d 788; Kearney v. St. Lucie (Fla. 1961), 126 So.2d 140, should not be lightly thrust aside. The principles announced in those cases had their genesis in practical necessity and were moulded out of hard factual experience under exigencies and emergencies arising during stringent periods in the growth of the state and its communities.
Courthouses and jails are highly essential to orderly traditional government. They can be destroyed by fire or by other disasters creating immediate grave county emergencies, the solutions for which should not be straitjacketed by uncertain and dubious procedures. Those who have gone before us in Florida history have recognized the practical need to treat such essential governmental facilities as special fundamental governmental exceptions to general funding processes required for other public projects and benefits.
Until the Legislature closes the narrow avenue provided by Section 2 of Article XII by modifying or repealing Section 135.01, the traditional path therein should be kept open to meet future governmental contingencies.
As in the matter of tax exemptions under Section 1, Article IX, and Section 16, Article XVI, Constitution 1885, I find analogously that the provisions of the Revised Constitution discussed herein repose in the Legislature under the transition schedule the discretion to implement the Revision's ad valorem millage restrictions as to existing millage authorizations at such times as it sees fit, giving due consideration to local needs and replacement revenues. Compare Jasper v. Mease Manor (Fla.), 208 So.2d 821; Daytona Beach Racing and Recreational Facilities Dist. v. Paul (Fla.), 179 So.2d 349; Central Baptist Church of Miami, Fla., Inc. v. Dade County (Fla.), 216 So.2d 4; and State v. Ocean Highway and Port Authority (Fla.), 217 So.2d 103.
ROBERTS, Justice (dissenting).
I respectfully dissent and would approve the certificates of indebtedness under the authority of Tapers v. Pichard, 124 Fla. 549, 169 So. 39, Posey v. Wakulla County, 148 Fla. 115, 3 So.2d 799 and a long line of cases following them. The providing of a jail as here, is such an essential requirement of government as to place the financial plan well within the perimeter of the foregoing series of cases, and in my opinion the 1968 revision of the Florida Constitution was not intended nor was it effective to void the precedents so established.
ERVIN, C.J., concurs.
BOYD, Justice.

ON PETITION FOR REHEARING
The original decision of February 25, 1970, herein is amended by striking out the paragraph reading as follows:
"We hold, therefore, that Florida Statute § 135.01 is invalid and the certificates of indebtedness proposed to be issued thereunder cannot be issued without approval of freeholders as provided by Section 12 of Article VII, Florida Constitution of 1968."
and inserting in the place thereof the following language, viz:
We hold, therefore, that "bonds, certificates of indebtedness or any form of tax anticipation certificates * * * maturing more than 12 months after issuance" *659 (the emphasized language is the exact language of Article VII, Section 12, of the Constitution of 1968) may not be issued or sold without prior approval by the qualified freeholder electors as provided in Article VII, Section 12 of the Constitution of 1968. This being so, it follows that Section 135.01, F.S.A., to the extent that it authorizes a levy to retire any such obligation "maturing more than 12 months after issuance" has been rendered invalid by the Constitution of 1968. This does not mean that necessary capital projects may not be financed by the issuance of such obligations. It merely means that approval therefore must first be obtained by qualified freeholder electors of the area affected and in which such tax levy must be made.
The Petition for Rehearing is visited to the said decision as so amended and is hereby denied. All pending petitions for leave to intervene as amicus curiae are also denied.
It is so ordered.
DREW, THORNAL, CARLTON and ADKINS, JJ., concur.
ERVIN, C.J., concurs specially with opinion.
ROBERTS, J., dissents with opinion.
ERVIN, Chief Justice (specially concurring):
I concur in the foregoing opinion on rehearing insofar as it deletes from the original opinion the holding that F.S. Section 135.01, F.S.A. is invalid and now holds that levies under Section 135.01 may be made without freeholder referendum approval to finance and retire certificates of indebtedness or tax anticipation certificates maturing within twelve months after issuance.
I would have been happier had the majority held Sections 2 and 17 of Article XII (the transition schedule) of the 1968 Constitution relaxed, during the period of transition from the old to the revised Constitution, the provisions of Section 12 of Article VII, placing restrictions on the issuance of long term certificates of indebtedness or tax anticipation certificates for essential governmental construction of county courthouses and jails, since it is my view that under Section 2 of Art. XII local tax millages authorized by existing laws at the time the revision became effective are to "be continued until reduced by law." Accordingly, levies under Section 135.01 could have been made, until said section is modified or repealed by the Legislature, to fund essential courthouse and jail construction in counties through the issuance of long term certificates of indebtedness pursuant to the holding in Tapers v. Pichard (1936), 124 Fla. 549, 169 So. 39, and a long line of following cases. The schedule, according to Section 17 thereof, was to control in all cases of conflict with earlier provisions of the revision.
As I read the majority view herein, it does not place levies made pursuant to Section 135.01 to service said certificates maturing within twelve months under the restriction of Section 9 of Article VII of the 1968 revision, i.e., the 10 mill cap on local levies, or for that matter on any levies now or hereafter authorized by law to fund certificates or bonds of local units which mature within a year after issuance.
In summation, I agree to the modification of the original opinion since it affords a measure of relief to local units by easing apparent restrictions construed from the language of the 1968 revision which I do not believe was intended.
ROBERTS, Justice (dissenting):
I would affirm the decision of the lower court.
NOTES
[1] Tapers v. Pichard, 124 Fla. 549, 169 So. 39 (1936); Posey v. Wakulla County, 148 Fla. 115, 3 So.2d 799 (1941); State v. Lafayette County, 55 So.2d 799 (Fla. 1952); State v. Sumter County, 60 So.2d 529 (Fla. 1952); State v. St. Johns County, 60 So.2d 530 (Fla. 1952); State v. County of Palm Beach, 89 So.2d 607 (Fla. 1956); State v. County of Dade, 92 So.2d 186 (Fla. 1957); State v. County of Santa Rosa, 105 So.2d 365 (Fla. 1958); State v. Lee County, 121 So.2d 788 (Fla. 1960); Kearney v. County of St. Lucie, 126 So.2d 140 (Fla. 1961).
[2] Mize v. County of Seminole, Florida, Fla., 229 So.2d 841, opinion filed September 24, 1969.
[3] 85 So.2d 852, 855, 59 A.L.R.2d 706 (Fla. 1956).
[4] "Ad valorem taxes, exclusive of taxes levied for the payment of bonds and taxes levied for periods not longer than two years when authorized by vote of the electors who are the owners of freeholds therein not wholly exempt from taxation, shall not be levied in excess of the following millages upon the assessed value of real estate and tangible personal property: for all county purposes, ten mills; for all municipal purposes, ten mills; for all school purposes, ten mills; and for special districts a millage authorized by law approved by vote of the electors who are owners of freeholds therein not wholly exempt from taxation. A county furnishing municipal services may, to the extent authorized by law, levy additional taxes within the limits fixed for municipal purposes."
[5] 230 So.2d 130, opinion filed November 3, 1969.