187 So.2d 37 (1966)
Robert WEBSTER, E.S. King and E.B. King, Appellants-Intervenors,
v.
NORTH ORANGE MEMORIAL HOSPITAL TAX DISTRICT, a Body Corporate and Political Subdivision of Orange County, Florida, Appellee-Petitioner.
No. 34869.
Supreme Court of Florida.
May 18, 1966.
Rehearing Denied June 23, 1966.
*39 Johnie A. McLeod, Apopka, for appellants-intervenors.
Giles, Hedrick & Robinson, Orlando, for appellee.
KANNER, District Judge (Ret.).
By final decree, the Circuit Court of Orange County validated hospital revenue bonds in the sum of $1,000,000 under petition of appellee, North Orange Memorial Hospital Tax District. Appellants-intervenors, citing Article IX, section 6, of the Florida Constitution, F.S.A., question primarily the district's power and authority under Chapter 59-1657, Laws of Florida, Special Acts of 1959, as amended and supplemented,[1] to issue the bonds without the approving vote of the freeholders.
Chapter 59-1657 contained a referendum requirement to be met before it could become effective. This act provided for creation of the hospital tax district for the purposes of establishing, constructing, operating, and maintaining a hospital or hospitals and authorized issuance of bonds not to exceed $200,000 for those purposes, requiring approval by referendum of such bond issue. Chapter 59-1657 and those bonds were by referendum ratified by majority vote of the qualified electors; but no bonds were issued pursuant to the authority thus granted, and no hospital has been constructed or acquired by the district.
Chapter 65-2019, the last legislative amendment of Chapter 59-1657, is the one which provides for issuance of revenue certificates to be paid from operation of the hospital facilities for the purpose of paying all or a part of the cost of acquiring, constructing, planning, leasing, repairing, making extensions and additions, equipping, and reconstruction of any hospitals and hospital facilities of the district. In subsection (8A) (5) this act specifically states:
"Revenue certificates issued under the provisions of this Act may be payable from the revenues derived from the operation of any hospital facility or combination of hospital facilities of the Hospital District under the supervision, operation and control of the Board of Trustees and from any other funds legally available therefor. The issuance of such Revenue Certificates shall not directly, indirectly or contingently obligate the State, the Board of Trustees or the Hospital District to levy any ad valorem taxes or to make any appropriations for their payment or for the operation and maintenance of the hospital facilities of the Hospital District." Emphasis supplied.
By its resolution, the board of trustees determines and declares that the servicing of the bonds and other payments provided for in the resolution are to be paid solely from the revenues to be derived from operation of the hospital and that such revenues will be sufficient to pay those obligations; further, that it will never be necessary or authorized to levy taxes of any nature on any real or personal property in the district to pay the bond obligations or to make other payments provided for in the resolution and that the bonds are not to constitute a lien upon any properties of the hospital or the district. "Gross revenues" or "revenues" are defined to mean all rates, *40 fees, rentals, or other charges or other income from operation of the hospital, excluding, however, proceeds of ad valorem taxation received by the district or accrued to it. The face of the bond specifies that it is and will continue to be payable solely from and secured by pledge of and lien upon the gross revenues to be derived from operation of the hospital and is not to constitute an indebtedness of the district within the meaning of any constitutional, statutory, or other provision or limitation; and it is expressly agreed that the bondholder will never have the right to require or compel the exercise of the ad valorem taxing power of the district for payment of the bond obligations or the making of other payments provided for in the resolution. The district obligates itself to maintain the hospital in good condition and continuously to operate it in an efficient manner and at a reasonable cost.
Under their primary question, appellants, citing as controlling and relying on the case of State v. Halifax Hospital District, Fla. 1963, 159 So.2d 231, point to a taxing provision of Chapter 59-1657 which provides for levy by the trustees annually of a tax not to exceed 2 mills for operation, maintenance, and repair of the hospital or hospitals authorized by the act and Chapter 63-1701, which amends it by adding that the stated millage can be used for financing and construction. Appellants' position is that the taxing provision renders mandatory the annual levy and collection of the tax not to exceed 2 mills for the stated purposes and that, for those purposes, this amounts to a supporting pledge of ad valorem taxes to guarantee payment of the bonds sought to be issued under Chapter 65-2019 without freeholders' sanction. Objected to also is addition through Chapter 63-1701 of the words "financing" and "construction" without a referendum to ratify those uses of the stated millage. It is emphasized that the resolution pledges the gross revenues to the servicing of the bonds and provides that such revenues are to be used first for that purpose before they can be used to pay the cost of continuously operating the hospital. Asserting that the evidence does not show that the revenues will be sufficient to pay both of these obligations, appellants conclude that the district can be and will be required to levy ad valorem taxes to take care of the latter.
The Halifax case is distinguishable from the one now before us. There, a 1925 act created the hospital tax district, while a 1963 amendment authorizing issuance of bonds to build additions to an existing hospital provided in effect that, so long as any of the bonds were outstanding, the power to assess and levy annual taxes for the operation, maintenance, and repairs of the hospital would not be repealed or reduced and that the 4 mills then being levied for operating and maintaining the hospital would not be reduced. The resolution proposed issuance of $2,400,000 hospital revenue bonds and pledged to their payment the gross revenues of the hospital, agreeing that the ad valorem levy then being assessed for maintenance and operation of the hospital would not be reduced during the life of the bonds. The district covenanted also to operate and maintain the hospital and agreed that the proceeds of the ad valorem levy of 4 mills would be deposited in the operating fund established by the resolution.
We declined to support the validation, finding that the obligation of the bonds comprehended both the pledge of the gross revenues and the pledge of the ad valorem tax. The irrevocable commitment to levy and collect a 4 mill tax for the operation and maintenance of the hospital during the life of the bonds we found to be as much an obligation of the bond resolution as was the pledge of the gross revenues. We reiterated our holding in prior cases that any device whereby exercise of the ad valorem taxing power is pledged and can be compelled, directly or indirectly, to meet the obligation of the securities is a "bond" which requires approval of the freeholders. But we also pointed out that, in numerous cases where there was no commitment by *41 the issuing agency to levy ad valorem taxes to meet any of the obligations of the bond contract, we have upheld the pledge of the gross revenues. Illustrative of such instances are the cases of Wolfe v. City of Ft. Lauderdale, Fla. 1950, 47 So.2d 781; State ex rel. Robinson v. North Broward Hospital District, Fla. 1957, 95 So.2d 434; State v. City of West Palm Beach, Fla. 1960, 125 So.2d 568; Town of Medley v. State, Fla. 1964, 162 So.2d 257.
Here, Chapter 59-1657, ratified by the freeholders, is the act by which the hospital tax district was established; but it is Chapter 65-2019 that is the source of the power to issue the present revenue certificates or bonds to be paid from operation of the hospital. In contrast to the 1963 amendment in the Halifax case, this enactment not only contains no commitment for levy and use of ad valorem taxes, but, to the contrary, it provides in clear and unequivocal terms that issuance of the revenue bonds shall in no wise obligate levy of ad valorem taxes for payment of the bond indebtedness or for operating and maintaining the hospital facilities. The resolution fully and with repetition comports with this statutory requisite, while the resolution in the Halifax case, consonant with the language of the statute, committed as part of the bond contract the 4 mill ad valorem tax then being levied and collected. To demonstrate, the "gross revenues" or "revenues" which are pledged in the present bond contract are defined so as to exclude ad valorem taxes; the hospital revenue fund authorized by the resolution, unlike the hospital operating fund established by the Halifax resolution, contains no provision for deposit therein of any ad valorem taxes. Too, by the language of the bond it is agreed that such bond is and will continue to be payable solely from and secured by pledge of and lien upon the gross revenues to be derived from operation of the hospital and that the bondholder may never compel exercise of the district's taxing power to make any of the payments provided for in the resolution.
As appellants say, Chapter 59-1657 does provide for levy and collection, on an annual basis, of ad valorem taxes not to exceed 2 mills for operation, maintenance, and repair. But, looking at that chapter, which is the initial enactment by which the tax district was created, approved by the freeholders, and at Chapter 65-2019, the one furnishing the authority for issuance of the bonds, enacted without a referendum, we find no language which ties the taxing provision of the former to the bonds sought to be issued under the latter so as to create a pledge through which the trustees, can be compelled to levy taxes in order to meet the obligation of these securities. Although appellants, in this connection, address additional grievances to provisions of two amendatory enactments relating to authorization of the district to borrow money, or to the borrowing provision of Chapter 63-1701 and Chapter 65-2003 amending it, we have examined those provisions also and discover no wording in them that creates a pledge of ad valorem taxes for these bonds. In summation of this subject, therefore, there arises from none of the four enactments mentioned in this paragraph, nor from the other amendment, Chapter 61-2579, relating only to boundary description of the district, any such pledge as is contended for by appellants; and the Halifax case has no applicability.
We turn now to appellants' statement that the evidence fails to show the revenues will be sufficient to service the bonds and to pay the cost of operating the hospital and that the trustees will be required to levy ad valorem taxes to take care of the latter covenanted obligation in order to guarantee payment of the former. As to this, appellants presented no testimony to controvert the evidence on behalf of the appellee, which included expert testimony that the pledged revenues from operating the hospital will be adequate to meet both of these obligations. Should the above contingency asserted by appellants eventuate, this would be the time to question the *42 legality of the trustees' action with respect to it through suit to prevent taxes. Wolfe v. City of Ft. Lauderdale, supra. We have consistently refused to interfere with matters of business policy and judgment incident to issuance of revenue bonds; we do not do so here, since it has not been shown that there was either fraud or violation of legal duty on the part of the governing body. Town of Medley v. State, supra.
Inappropriate for consideration in this proceeding also are objections of appellants directed to past expenditures and past levy of taxes by the trustees.
It is also asserted, though, that Chapter 59-1657 and its amendments violate Article III, Sections 16, 20, and 21 of the Florida Constitution. We deem it necessary to deal only with appellants' attack upon the two basic enactments, Chapters 59-1657 and 65-2019, which supply the authority necessary for issuance of the bonds.
One argument concerns the area description of the tax district in Chapter 59-1657 and the redescription made through enactment of Chapter 61-2579. The original chapter described the geographical boundaries of the district so as to include a very small portion of Lake County, while the latter completely redescribed the district, omitting such portion. The violation indicated is that neither act was advertised in Lake County. However, both the title of Chapter 59-1657, approved by the qualified electors, and language throughout the body of the act, including the introductory statement of section 1 describing the district, prescribe and limit the tax district as one to be created in Orange County. Even though lands are unconstitutionally included in the district, that of itself does not invalidate the district or its legal powers. The remedy in such instance would be relief of particular lands in the district from illegal taxation through suit of the landowners. State ex rel. Davis v. Ryan, 1934, 118 Fla. 42, 151 So. 416, 158 So. 62. It does not appear, though, that any taxes were ever levied or collected in Lake County, that there has been any attempt to do this, or that the freeholders of that county have been affected by or are interested in the subject matter of Chapter 59-1657.
Appellants assault Chapters 59-1657 and 65-2019 by saying that the 1959 act is broader than its title and that Chapter 65-2019 violates the requirement forbidding amendment by reference to title only. The answer to these objections lies within a reading of the enactments, with their titles, in the light of the applicable tests. By doing this, we find that the title of Chapter 59-1657, which is quite comprehensive, suffices to give notice of the subject of the statute creating the tax district so as reasonably to lead to inquiry by interested persons into the body of the act, which is all that is necessary. King Kole, Inc. v. Bryant, Fla. 1965, 178 So.2d 2; Wiggins v. City of Green Cove Springs, Fla. 1963, 159 So.2d 219; State v. Florida Development Commission, Fla. 1962, 143 So.2d 8. As to Chapter 65-2019, amended by reference to title only, or without republication of the basic act, this statute we find to be complete, coherent, and intelligible when read in isolation, so that it is unnecessary to refer to the books in order to relate it to the chapter amended, or Chapter 59-1657. Lipe v. City of Miami, Fla. 1962, 141 So.2d 738; Auto Owners' Ins. Co. v. Hillsborough County Aviation Authority, Fla. 1963, 153 So.2d 722. In introducing the house bill for enactment of Chapter 65-2019, the House of Representatives determined, moreover, that the notice and evidence required by section 21 of Article III had been established in that Legislature. We find no reason to disturb that determination.
We conclude that there is no legal bar to prevent validation of the hospital revenue bonds.
Affirmed.
THORNAL, C.J., and O'CONNELL and ERVIN, JJ., concur.
CALDWELL, J., dissents.
NOTES
[1] Besides the original enactment, Chapter 59-1657 (creating the hospital district) and Chapter 65-2019, (the final amendment, or the one providing for issuance of these revenue certificates or bonds) there are three other enactments, Chapters 61-2579 and 63-1701 amending Chapter 59-1657 and Chapter 65-2003 amending Chapter 63-1701.