216 So.2d 202 (1968)
STATE of Florida et al., Appellants,
v.
REEDY CREEK IMPROVEMENT DISTRICT, Appellee.
No. 37569.
Supreme Court of Florida.
November 27, 1968.
*204 Arthur L. Steed, Orlando, for appellant.
Helliwell, Melrose & DeWolf, Orlando, and Bryant, Freeman, Richardson & Watson, Jacksonville, for appellee.
ERVIN, Justice.
We review on appeal a final judgment of the Circuit Court for Osceola County validating two series of drainage revenue bonds sought to be issued by Reedy Creek Improvement District, within Orange and Osceola Counties, in the aggregate principal amount not to exceed $12,000.000.
Chapter 67-764, Laws of Florida, Special Acts 1967, provides for the establishment, powers and functions of the Reedy Creek Improvement District. The act specifically grants the power to the District Board of Supervisors to adopt a plan of drainage and reclamation of wet and submerged lands within the District and the placing of such lands under a system of water control, and authorizes the District to issue revenue bonds to finance the cost of same.
The District, by resolution duly adopted by its Board of Supervisors on January 31, 1968 (hereinafter called the Board), divided the District into two areas, designated Subdistricts One and Two, so that the facilities and services of such drainage improvements can be furnished on the basis of subdistricts as provided by the act.
The Board adopted on May 6, 1968 a resolution authorizing Drainage Revenue Bonds, Series A and B, in the aggregate principal amount of not exceeding $12,000,000 for the purpose of paying the cost of providing for the drainage and reclamation of wet and submerged lands within Subdistrict One and the placing of such lands under a system of water control. The bonds are to be dated October 1, 1968; will be in the denomination of $5,000 each; will bear interest from their date at such rate or rates not exceeding the maximum rate fixed by the act, such interest being payable semi-annually April 1 and October 1 of each year; and will mature serially. Series A will mature on October 1 of each of the years 1970 to 1999, both inclusive, and Series B will mature on October 1 of each of the years 1975 to 2004, both inclusive.
The bonds shall be payable as to both principal and interest solely from the net revenues derived from the services and facilities of the project. The bonds will not constitute general obligations of the District and no holder shall have the right to compel the exercise of the taxing power *205 of the District or taxation in any form upon any real property therein to pay the cost of the operation and maintenance of the project or to pay such bonds or the interest thereon. Said bonds and the interest thereon shall not constitute a lien upon any property of or in the District, but only a lien upon the revenues derived from the services and facilities of the project.
After entry of an order to show cause and the submission of an answer to the complaint on behalf of the State, a hearing was held after which the Circuit Court entered its final judgment determining, inter alia, that the bonds are not "bonds" within the meaning of Section 6, Article IX, State Constitution, F.S.A., and are not required by the Constitution and Statutes to be approved at an election by the qualified electors who are freeholders residing in Orange and Osceola counties. The court also found that the primary purpose of the project funded by the bonds is public and that such benefit to private enterprise, if any, from the construction of the project is purely incidental to the primary purpose. Finally, the court found the District had been lawfully created and that the enabling act, Chapter 67-764, did not violate any provisions of the Constitution of Florida.
The State challenges the final judgment of the Circuit Court on several grounds.
The first challenge against validation of the bonds is that their issuance will constitute the employment of public funds or the pledging of public credit for private purposes in violation of Section 10, Article IX, State Constitution. The basis for the State's contention in this regard is that the Disney interest (Walt Disney World Company) is the largest landowner in the District and that therefore the contemplated reclamation and water control improvements are oriented to serve primarily the benefit of that particular private enterprise. We find this contention untenable.
In enacting Ch. 67-764, the Legislature found that the general welfare and continued prosperity of Florida depends in a large measure upon tourism, recreation and the conservation of natural resources. The Legislature further determined that fostering such programs are valid public purposes and that through the creation and operation of the instant special improvement district such desirable objectives will be furthered to the extent of the District's ability. While the legislative finding that development of the proposed district would serve a valid public purpose is not conclusive, it should not be disturbed absent a showing that it is arbitrary and unfounded. State v. Daytona Beach Racing & Rec. Fac. Dist. (Fla. 1956), 89 So.2d 34; State v. City of Jacksonville (Fla. 1951), 53 So.2d 306. At this juncture we need not belabor the numerous authorities in this jurisdiction sustaining the promotion and development of tourism and recreation as valid public purposes. See State v. Daytona Beach Racing and Rec. Fac. Dist., supra; State v. Inter-American Center Authority (Fla. 1955), 84 So.2d 9, and State v. Escambia County (Fla. 1951), 52 So.2d 125, as examples of the recent decisions to this effect.
In the present case we are convinced that the measures and improvements contemplated by the District are designed to encourage and develop those purposes spelled out in the enabling act. Successful completion and operation of the District no doubt will greatly aid the Disney interest and its contemplated Disneyworld project. However, it is obvious that to a lesser degree the contemplated benefits of the District will inure to numerous inhabitants of the District in addition to persons in the Disney complex.
The proposed improvements also embrace measures designed to develop improved sanitation and pest control conditions as well as aiding the conservation of natural resources. Besides the public benefit derived by inhabitants of the District from such measures, we conclude that the integrated plan or workings of the District and its related improvements are essentially and primarily directed toward encouraging *206 and developing tourism and recreation for the benefit of citizens of the state and visitors to the state generally. Accordingly, we find no reason for disturbing the Circuit Court's finding that the primary purpose of the project funded by the bonds is public and that any benefit to private enterprise from construction of the project is purely incidental to the primary purpose.
As its second point of contention, the State questions the propriety of legislative establishment of a multi-county, multi-purpose special improvement district with numerous and diverse powers. We see little merit to this challenge. So long as specific constitutional provisions are not offended, the Legislature in the exercise of its plenary authority may create a special improvement district encompassing more than one county and possessing multi-purpose powers essential to the realization of a valid public purpose. In the present case, the numerous and diverse powers granted to the District by the enabling act appear to be logically related and essential to the realization of the valid public purposes by the District. In reaching this conclusion, we reject the State's argument that the powers granted the District are commensurate in scope with those characteristic of a local municipal government rendering the enabling act a mere subterfuge to avoid the creation of a municipality. Nor can we accept the view advanced by the State that the enabling act embraces an unlawful attempt to delegate the taxing power of the state or that the same is tantamount to a gross abuse of legislative authority. The taxing provisions contained in Ch. 67-764 contain sufficient limitations to absolve them from the charge that they are unlawful delegations of authority.
The State next contends that Ch. 67-764 does not comply with Section 16, Article III, State Constitution, requiring each law to embrace but one subject and such subject to be briefly stated in the title. While it is the duty of the courts to strike down an act which clearly offends the above cited constitutional requirement, it is a well settled principle that courts should refuse to declare an act void as violative of this section except in clear cases free from every reasonable doubt. Ex parte Pricha, 70 Fla. 265, 70 So. 406. See also, King Kole, Inc. v. Bryant (Fla. 1965), 178 So.2d 2. Although the title to Ch. 67-764 is lengthy and quite detailed, we think it fairly gives notice of the subject of the act sufficient to reasonably lead to inquiry into the body of the act, preventing fraud or surprise from provisions contained therein. King Kole, Inc., supra; Webster v. North Orange Memorial Hosp. Tax Dist. (Fla. 1966), 187 So.2d 37. We further reject the view that Ch. 67-764 contains a plurality of subjects. The general subject of Ch. 67-764 is the establishment and granting of powers to insure the successful operation of a special improvement district. After careful review, we conclude that matters treated or contained in Ch. 67-764 are fairly and naturally germane to, or reasonably connected with, the subject of the act so as to render their inclusion therein permissible under Section 16, Article III. See State ex rel. Flink v. Canova (Fla. 1957), 94 So.2d 181.
We come now to the contention that Ch. 67-764 contravenes Section 20, Article III, State Constitution. Section 20, Article III proscribes, inter alia, the enactment of special or local laws regulating the jurisdiction and duties of any class of officers except municipal officers. The State argues that this prohibition is violated by Sections 29 and 40(11) of Ch. 67-764 which empower the tax assessors and tax collectors of Orange and Osceola counties to assess and collect ad valorem taxes and special assessments of the District and further provides compensation for their services in assessing and collecting the same. The State's argument in this respect is not convincing. This Court has consistently adhered to the position that it is permissible under the limitations of Section 20, Article III for the Legislature to impose on state and county officers administrative duties *207 as an incident to the formation of a taxing district for governmental purposes in order to effectuate the purposes of the district. Wilson v. Hillsborough County Aviation Authority (Fla. 1962), 138 So.2d 65; State v. City of Tampa (Fla. 1954), 72 So.2d 371; Vassar v. Arnold (1944), 154 Fla. 757, 18 So.2d 906; Martin v. Dade Muck Land Co. (1928), 95 Fla. 530, 116 So. 449; Lainhart v. Catts (1916), 73 Fla. 735, 75 So. 47. In Lainhart v. Catts the duties imposed on tax assessors and collectors within the district there considered resemble those contained in Ch. 67-764 and the rationale of the Lainhart case supports our disposition of the present challenge.
The last objection to the establishment and operation of the District asserts that the fees to be charged for the services of the project are arbitrary and against public policy. We are not persuaded by this argument.
Chapter 67-764 specifically empowers the District to issue general obligation bonds, revenue bonds, assessment bonds or any other bonds or obligations, or any combination of the foregoing, to pay all or part of the cost of construction, operation and maintenance of the projects of the District, and for the retirement or refunding of any obligations issued for such purposes. Pursuant to such power, the Board, in the exercise of its delegated discretion, determined that the project best could be financed by the issuance of revenue bonds. Subsection 17.D of the resolution authorizing the bonds in question contains a covenant on the part of the District that the fees charged will be sufficient to provide (1) for operation and maintenance of the facilities, (2) for debt service on the bonds, and (3) for other payments required by the resolution. In this respect, the resolution complies with the requirements set out in Section 18 of the enabling act pertaining to the sufficiency of the fees to be charged for services of the facilities operated by the District. The resolution imposing fees for the use of the facilities provides that the fees will be revised from time to time in order to be sufficient to meet the requirements of Section 18 of the act and Section 17.D of the bond resolution. The rates imposed by this resolution are based directly on the amount of rainfall in the District. A minimum charge is fixed to meet the requirements as set out in the act and bond resolution and in addition provision is made for a surcharge based upon excessive rainfall to cover the cost of protecting lands in the District against flooding. The users of the facilities are classified pursuant to a zoning system with a relative runoff factor assigned to each class. The District Engineer testified that the rates, fees and charges were based directly upon the value of the services to be provided by the project and that the method adopted by the Board was reasonable. We conclude from the record evidence that the charges and fees under the system set up by the Board have a direct and reasonable relationship to the beneficial use of the District's facilities and accordingly are not arbitrary, unfair or inequitable as asserted by the State. Compare State v. City of Miami (1946), 157 Fla. 726, 27 So.2d 118; State v. City of Daytona Beach (1948), 160 Fla. 204, 34 So.2d 309.
No error having been made to appear, the final judgment of validation is affirmed.
It is so ordered.
THOMAS, ROBERTS and THORNAL, JJ., concur.
DREW, J., concurs specially with Opinion.
CALDWELL, C.J., and HOPPING, J., concur specially and agree with DREW, J.
DREW, Justice (concurring specially):
I concur with the judgment of affirmance and the disposition of those issues essential to determination of the validity of Chapter 67-764 vel non, but conclude that these proceedings, limited to validation of *208 revenue bonds for reclamation and water control improvements, do not require full evaluation of the scope and propriety of the grant of powers to the District under the Act.
CALDWELL, C.J., and HOPPING, J., concur.