299 So.2d 121 (1974)
The HERTZ CORPORATION, a Delaware Corporation, and Hillsborough County Aviation Authority, a Public Body Corporate, for Itself and for the Use and the Benefit of the Hertz Corporation, Appellants,
v.
R.R. WALDEN, As Tax Assessor of Hillsborough County, Florida, et al., Appellees.
No. 73-981.
District Court of Appeal of Florida, Second District.
July 19, 1974.
Rehearing Denied September 6, 1974.
*122 Paul B. Johnson, Gregory, Cours, Paniello & Johnson, Tampa, for appellant The Hertz Corp.
Stewart C. Eggert, Allen, Dell, Frank & Trinkle, Tampa, for appellant Hillsborough County Aviation Authority.
Brooks P. Hoyt, Macfarlane, Ferguson, Allison & Kelly, Tampa, for appellee R.R. Walden, as Tax Assessor of Hillsborough County.
Robert L. Shevin, Atty. Gen., and Winifred L. Wentworth, Asst. Atty., Gen. Tallahassee, for appellee Dept. of Revenue, State of Florida.
GRIMES, Judge.
This case involves whether ad valorem taxes can be assessed against certain properties owned by the Hillsborough County Aviation Authority (Authority) at Tampa International Airport and leased to the Hertz Corporation (Hertz) for car rental purposes. Similar properties are also leased to Avis Rent-A-Car, but the taxability of these properties is not in issue in this case. The lower court held the Hertz properties to be taxable. Hertz and the Authority have appealed.
There are two facilities leased to Hertz on the airport property. One of these, called the Outside Car Rental Facility, is a structure consisting of two levels which is connected to the landside terminal building. The first level is adjacent to the airport baggage claim area and is used for parking automobiles that are ready to be rented and for servicing, fueling and washing the automobiles. The second level is used to return rented automobiles, and there is an office on that level for that purpose. The second level is constructed so that a passenger returning a rental automobile may park the car on the second level, conclude his business at the office and walk across a bridged walkway into the ticket level of the landside terminal building. Hertz's portion of the Outside Facility can accommodate one hundred automobiles.
The second facility leased by Hertz is called the Remote Facility. It is located slightly more than a mile away from the terminal building. The Outside Facility does not have sufficient parking spaces to serve the traveling public during peak periods of airplane arrivals. Therefore, a greater number of cars are kept available at the Remote Facility so that they can be easily shuttled to the Outside Facility to be delivered to waiting passengers. The Remote Facility is used by Hertz for the storage of approximately seven hundred rental cars. Automobiles stored at the Remote Facility are occasionally dispatched to other Hertz locations in nearby towns. The Remote Facility also houses a Hertz administrative office and is used for the major maintenance of all Hertz rental cars which serve the area.
The Outside Facility was built as part of the landside terminal and the construction was financed through the issuance of revenue bonds. Hertz built the Remote Facility on land leased from the Authority. The trial court concluded that since the erection of the Outside Facility had been financed by a revenue bond issue, the leasehold interest of Hertz in that facility was taxable because of Article VII, Section 10(c) of the 1968 Constitution of the State of Florida. Therefore, insofar as the Outside Facility is concerned, it is necessary for us to consider whether this constitutional provision requires its taxation.
The pertinent portion of Article VII, Section 10 states:
"Section 10. Pledging credit.  Neither the state nor any county, school district, *123 municipality, special district, or agency of any of them, shall become a joint owner with, or stockholder of, or give, lend or use its taxing power or credit to aid any corporation, association, partnership or person; but this shall not prohibit laws authorizing:
* * * * * *
(c) the issuance and sale by any county, municipality, special district or other local governmental body of (1) revenue bonds to finance or refinance the cost of capital projects for airports or port facilities, or (2) revenue bonds to finance or refinance the cost of capital projects for industrial or manufacturing plants to the extent that the interest thereon is exempt from income taxes under the then existing laws of the United States, when, in either case, the revenue bonds are payable solely from revenue derived from the sale, operation or leasing of the projects. If any project so financed, or any part thereof, is occupied or operated by any private corporation, association, partnership or person pursuant to contract or lease with the issuing body, the property interest created by such contract or lease shall be subject to taxation to the same extent as other privately owned property." (emphasis supplied)
The appellants argue that the provisions of Section 10(c) are inapplicable, because even though its lease of the Outside Facility was dated subsequent to the effective date of the 1968 Constitution, the Outside Facility was financed by revenue bonds issued prior thereto. We do not have to reach this point, because we do not construe the last sentence of Section 10(c) to be self executing.[1] We believe this language to mean that even though the construction of facilities has been financed through the issuance of revenue bonds under this section, such facilities when leased to private entities are not necessarily exempt from taxation simply because public financing has been involved. In other words, this section attempts to put these properties on a parity with other facilities owned by a governmental body and leased to private organizations which were built without being financed by revenue bonds. Thus, Section 10(c) states that the property interest created by the lease "shall be subject to taxation to the same extent as other privately owned property." Whether or not such leased property, the construction of which was financed by revenue bonds, shall be taxed still depends on whether or not it is property which would otherwise be taxable. The answer to this question as it relates to the properties in question depends upon the pertinent exemption statutes as applied to the use which is being made of the property. This is the critical issue both with respect to the Outside Facility and the Remote Facility.
Section 196.001(2), F.S.A. 1973, says that unless expressly exempted, all leasehold interests in the property of any political subdivision or authority of the state are taxable. Section 196.199, F.S.A. 1973 states in part:
"(2) Property owned by the following governmental units but used by nongovernmental lessees shall only be exemppt from taxation under the following conditions:
(a) Leasehold interests in property of the United States, of the state or any of its several political subdivisions, or of municipalities, agencies, authorities and other public bodies corporate of the state shall be exempt from ad valorem taxation only when the lessee serves or performs *124 a governmental, municipal or public purpose or function, as defined in § 196.012(5). In all such cases, all other interests in the leased property shall also be exempt from ad valorem taxation."
The pertinent portion of Section 196.012(5), F.S.A. 1973 reads:
"Definitions.  For the purpose of this chapter the following terms are defined as follows except where the context clearly indicates otherwise:
* * * * * *
(5) Governmental, municipal, or public purpose or function shall be deemed to be served or performed when the lessee under any leasehold interest created in property of the United States, the state or any of its political subdivisions, or any municipality, agency, authority, or other public body corporate of the state, is demonstrated to perform a function or serve a governmental purpose which could properly be performed or served by an appropriate governmental unit, or which is demonstrated to perform a function or serve a purpose which would otherwise be a valid subject for the allocation of public funds... ."
Both sides cite Hillsborough County Aviation Authority v. Walden, Fla. 1968, 210 So.2d 193, in support of their position. This case involved the taxation of certain property leased by the Authority to private lessees at the old Tampa Airport. Among the lessees were two car rental companies, one of which was Hertz. The Supreme Court approved the lower court's determination that these properties were not entitled to tax exemption because they were being used for a predominantly private purpose. We do not believe that the Walden decision is controlling as to Hertz in the instant case because it related to the car rental facilities at the old airport which were entirely different from those now under consideration. Moreover, the chancellor in Walden did not have before him the comprehensive testimony concerning the indispensability of readily available car rental facilities at a modern airport. The appellants cite Walden because of the analogy which may be drawn concerning the use of Bartke's Restaurant Service Building which was held to be predominantly public in nature as an indispensable facility supporting the operation of the restaurant located in the old terminal building.
In Dade County v. Pan American World Airways, Inc., supra, the Supreme Court held certain property leased by Pan American from the Dade County Port Authority at Miami International Airport to be exempt from taxation. The property included an operations and aircraft overhaul base, an airline terminal facility, executive reservations and accounting offices, a flight simulator building and some warehouses. The court held that the properties were used for a public purpose so as to come within the statutory exemption of Section 196.25, F.S.A. 1969.[2] The fact that Pan American was a profit making venture was said not to prevent the property from being considered as used for a public purpose.[3]
A.J. Brough, now Vice President of Hertz and formerly active in the design of air terminal facilities, testified below that rent-a-car facilities were essential to the traveling public. He cited a 1967 independent survey which found that it was extremely important to the public and to the operation of an airport to have rental car facilities as convenient as possible to the users of those services. He further testified that he knew of no airport which *125 did not have the availability for rental car transportation service. He pointed out that a number of smaller airports actually provide their own rental car service.
George Bean, the Director of the Authority, testified that it was essential to provide rental car facilities at major airports. He said the traveling public has come to rely upon the immediate availability of rental cars when they arrive at an airport and to rely upon a convenient place to leave their rental cars when they fly out of the airport. The evidence showed that in 1972 Hertz had rented 69,205 cars at Tampa International Airport. Approximately one out of every seventeen deplaning passengers contracted with either Hertz or Avis for a rental car in 1972.
We recognize that the trial court has made a finding that Hertz's use of the Outside Facility was predominantly private in nature, yet all of the evidence considered in light of the applicable authorities leads us to the opposite conclusion. There was no dispute over the fact that the existence of car rental facilities immediately adjacent to the terminal was essential to the successful operation of the airport. The airport terminal is neither the beginning nor the end of the passenger's trip. He must have a way to get to the airport and a way to leave the airport. The evidence reflects that in this day and time rented cars are an important means to this end, and that an airport without immediately available car rentals would fall short of fulfilling its responsibility to serve the traveling public. We, therefore, conclude that Hertz's use of the Outside Facility was predominantly public in nature and entitled to exemption from taxation under Section 196.199(2)(a), F.S.A. 1973.
Hertz's use of the Remote Facility stands on a somewhat different footing. True, there is evidence to show that it provides a necessary supporting function to the services offered by Hertz at its Outside Facility. However, there is nothing to indicate that this supporting function could not be furnished on property beyond the airport boundaries. While it is essential for the airport to have some rental car facilities next to the terminal, as in the case of the Outside Facility, it is not necessary for the airport to have the supporting facility so near the airport that it must be located on the airport property. Moreover, in addition to providing support to the Outside Facility, the activities of Hertz at the Remote Facility include interests which are totally unrelated to the airport car rentals. Though the distinction between the Outside Facility and the Remote Facility may be one of degree, this does not mean that a distinction cannot be made. There is substantial evidence to support the finding of the court below that the use of the Remote Facility by Hertz was predominantly private in nature. Hence, we believe that ad valorem taxes may properly be assessed against the leasehold interests of Hertz at the Remote Facility.
The appellants also make an Equal Protection of Law argument with reference to both facilities. This argument has some appeal in light of the fact that property reserved at the airport for use of several limousine companies and a taxicab company and property leased by the Authority to food caterers and freight forwarding companies are not taxed. In view of our holding above, this contention is moot as regards the Outside Facility. With reference to the Remote Facility, we do not believe the appellants have demonstrated the purposeful and wholesale discrimination necessary to set aside an assessment. See Folsom v. Bank of Greenwood, 1929, 97 Fla. 426, 120 So. 317. Faced with a variety of property usages and legal precedents which are not always in total harmony, the tax assessor appears to be doing the best he can to try to assess the airport in an evenhanded manner.
The judgment is affirmed in part and reversed in part in accordance with this opinion.
MANN, C.J., and McNULTY, J., concur.
NOTES
[1] Faced with a similar contention in Dade County v. Pan American World Airways, Inc., Fla. 1973, 275 So.2d 505, the trial court held that this constitutional provision required implementation by the Legislature before it could become effective. The Supreme Court affirmed without passing on the issue because the leases in question had been executed prior to the effective date of the 1968 Constitution. In his dissenting opinion, Justice Ervin said that the leased property did not qualify for a statutory exemption prior to the new Constitution and that Article VII, § 10 now precluded the Legislature from even trying to provide for such an exemption.
[2] The exemption provisions of Section 196.25, F.S.A. 1969, insofar as pertinent to this discussion, read substantially the same as those contained in Section 196.199, F.S.A. 1973.
[3] For a more comprehensive treatment of what constitutes a public purpose, albeit in the context of bond validation proceedings, see State v. Reedy Creek Improvement District, Fla. 1968, 216 So.2d 202; State v. Daytona Beach Racing & Rec. Fac. Dist., Fla. 1956, 89 So.2d 34.