QUESTION: May the City of Hialeah acquire Hialeah Racetrack under the terms outlined below?
SUMMARY: Premised upon described procedural and contractual limitations and safeguards, the City of Hialeah may purchase the Hialeah Race Track and lease the facility to a private person pursuant to a lease-purchase agreement. The essential aspects of the proposed purchase, as I understand them, are that the present owner of Hialeah Park, Inc., will convey fee title of the park to Mr. John Brunetti. Mr. Brunetti will in turn convey fee title to the city. Hialeah Park, Inc., will receive approximately $12.3 million as consideration for this conveyance. The city will provide $9,000,000. The city will finance its share of the purchase price through loans from various local lending institutions. These city loans will be evidenced by promissory notes secured by a purchase money mortgage on the track and will be repaid solely from revenue generated by the city's leasing of the park. The city will then lease the track back to Mr. Brunetti pursuant to a 30- year lease-purchase agreement. The terms of the agreement provide, among other things, that during the life of the agreement, the track will be used as a thoroughbred racing facility and for other municipal-public "recreational and educational purposes." Recognizing the time limitations imposed and subject to the following discussion, I am of the opinion that the City of Hialeah may exercise its discretion to purchase the track in the manner described above. Section 7 of the city charter provides that: The city is authorized to acquire by purchase or condemnations . . . parks, park lands . . . or other public places . . . and to enter into and to execute contracts, leases or mortgages thereon, at the purchase price thereof; provided, however, that the time of payment shall in no case be for a longer period than thirty years, nor shall the rate of interest on such payments exceed six percent per annum. The council is authorized to issue such evidences of indebtedness for the purchase price, as it may deem proper. All net revenues derived from any of the properties so purchased shall be applied on the payment of interest and creating a sinking fund for the redemption of such obligations. Any obligation issued under this section shall be exclusive of the limitation of the power of the city to issue bonds as provided in this charter. (Emphasis supplied.) Section166.111, F. S., of the Municipal Home Rule Powers Act, provides that: The governing body of every municipality may borrow money, contract loans, and issue bonds as defined in s. 166.101 from time to time to finance the undertaking of any capital or other project for the purposes permitted by the State Constitution and may pledge the funds, credit,
property, and taxing power of the municipality for the payment of such debts and bonds. (Emphasis supplied.) Section 166.101(8), F. S., provides that "[t]he term `project' . . . embraces any capital expenditure which the governing body of the municipality shall deem to be made for a public purpose." (Emphasis supplied.) See also s. 166.021, F. S., providing that municipalities "may exercise any power for municipal purposes, except when expressly prohibited by law." (Emphasis supplied.) Based upon the above statutory provision, the city council has the authority to borrow money to finance the track purchase, to secure such indebtedness with a mortgage (maximum 30 years at 6 percent) on the track, and to lease the track (once purchased) if done so in a manner consistent with the applicable statutory and constitutional limitations. The city does not contend that it is within an exemption enumerated in s. 10(c) and (d), Art. VII, State Const. Section 10 generally prohibits the pledging of municipal credit or taxing power to aid private entities for other than municipal purposes. Thus, the city council must conclude that the transaction and track purchase will serve a "public purchase." Bannon v. Port of Palm Beach Dist., 246 So.2d 737 (Fla. 1971). The Florida Supreme Court in City of West Palm Beach v. Williams,291 So.2d 572, 578 (Fla. 1974), stated that a legislative finding that a proposed undertaking would serve a valid public purpose should not be disturbed absent a showing that it is arbitrary and unfounded. See State v. Reedy Creek Improvement District,216 So.2d 202 (Fla. 1968); State v. Daytona Beach Racing and Rec. Fac. Dist., 53 So.2d 34 (Fla. 1956); and State v. City of Jacksonville,53 So.2d 306 (Fla. 1951). The proposed track purchase will be held constitutionally valid under s. 10, Art. VII, State Const., upon a sufficiently demonstrated determination that the public will be primarily benefited and any private persons only incidentally benefited. In State v. Daytona Beach Racing Rec. Fac. Dist., supra, the public purpose aspect of the Daytona Beach Motor Speedway was unsuccessfully challenged as being predominantly for private purpose. The court refused, unless blatantly erroneous, to disregard the legislative conclusion that the speedway furthered "public purposes in promoting the economic, commercial and residential development of the District." The court concluded that governmental ownership and operation of the speedway "would serve a valid public purpose." The Florida judiciary, on many occasions, has recognized the significant governmental revenue interest and public purpose in the Florida pari-mutuel industry. Gulfstream Park Racing Association, Inc. v. Board of Business Regulation,318 So.2d 458 (1 D.C.A. Fla., 1975) cert. denied 322 So.2d 979 (Fla. 1975); West Flagler Association, Ltd. v. Board of Business Regulation, 241 So.2d 369, 376 (Fla. 1970); Wilson v. Sandstrom,317 So.2d 732 (Fla. 1975); Hialeah Racecourse, Inc. v. Gulfstream Park Racing Association, (Fla. 1971); Hubel v. West Va. Racing Commission, 513 F.2d 243 (4th Cir. 1975). The state's goal of maximizing production of tax revenue was implicitly recognized in Calder Race Course, Inc. v. Board of Business Regulation,319 So.2d 67 (1 D.C.A. Fla., 1975). The Hialeah track's economic situation was given significant judicial recognition in Gulfstream Park Racing Assoc. v. Bd. of Business Regulation: The Board finds that it would not be in the best interest of the State if Hialeah Race Track closed its operation because that closing would adversely affect the entire thoroughbred industry within the State of Florida, and could have a deleterious effect on other revenue producing industries, not the least of which is Florida's tourist industry. Owners of horses are annually attracted to Florida's winter racing season because of the continuing operation of the three race tracks (Tropical racing at Calder, Hialeah and Gulfstream), and the Board finds in addition, that Hialeah stabled and raced an impressive list of the nation's leading thoroughbreds. * * * * * The evidence further justifies the Board's apprehension that Hialeah's closing would adversely affect the breeding industry and tourism generally. [318 So.2d at 465-466.] These judicial determinations of the paramount public interest in the survival of the Hialeah track are buttressed by the 1975 legislative findings regarding the Florida thoroughbred pari-mutuel industry. See Chs. 75-42, 75-43, and 75-44, Laws of Florida. Based upon these judicial and legislative determinations of a predominant public purpose together with the submitted economic studies of the track's impact upon the city, the city council could properly find a "public purpose" in the track's purchase and is consistent with s. 10, Art. VII, State Const. It should also be noted that in addition to the sales and ad valorem taxes generated by the track's operation, the track recently produced approximately $1,800,000 in pari-mutuel taxes. The referendum restrictions imposed by s. 12, Art. VII, State Const., are applicable only when a municipality issues bonds, certificates of indebtedness, or any form of tax anticipation certificates payable from ad valorem taxation and maturing more than 12 months after issuance. State v. County of Dade, 234 So.2d 651 (Fla. 1970); Nohr v. Brevard County Educ. Fac. Author., 247 So.2d 304
(Fla. 1971). In Nohr, the court concluded that the possibility of the district's moral obligation to levy taxes or appropriate funds brought that bond issuance within the purview of s. 12. The distinguishable facts presented here are: The lease-purchase arrangements between the city and Mr. Brunetti; the city's contractual arrangement not to have any legal or moral obligation to expend any municipal funds; and the financial arrangements whereby the lending institutions have agreed never to look to the city for any financial relief and to limit their recourse to Mr. Brunetti and the property. Based upon the submitted agreements and data, contractual assurances referenced above, and the city council's determination that a public purpose is served by purchase of the track, it is my opinion that the city may purchase the Hialeah Race Track. State ex rel. Dade Co. Kennel Club, Inc. v. State Racing Commission, 156 So. 343 (Fla. 1934).