PER CURIAM.
This cause is before us on appeal from the order of the Department of Environmental Regulation (DER) that Reedy Creek Improvement District (Reedy Creek) had waived its right to a formal administrative hearing on the application of Central Florida Utilities, Inc. (Central) for a permit to construct a wastewater treatment facility, which facility would discharge effluent into Bonnett Creek, located within the Reedy Creek District.
Reedy Creek is a multi-county, special improvement district established by the Legislature in 1967 pursuant to Chapter 67-764, Laws of Florida, and entrusted with the authority to adopt a plan of drainage and reclamation of wet and submerged lands within the district and to place such lands under a system of water management. See, State v. Reedy Creek Improvement District, 216 So.2d 202 (Fla.1968).
On September 30,1976, Reedy Creek was approved by DER as an official local pollution control program in accordance with Section 403.182, Florida Statutes (1981). That statute provides, inter alia, that the local pollution control program shall cooperate with and assist DER in carrying out its powers, duties, and functions. Under the Local Pollution Control Program Agreement between Reedy Creek and DER, Reedy Creek is required to be an active participant in the environmental permitting process, and provision is made for Reedy Creek to be advised of applications for all permits that have potential to affect the quality or quantity of water under its control. The agreement is in pertinent part as follows:
1.4 The local program shall be advised of all applications submitted from within the District and drainage areas shown in the Exhibit I attached hereto for federal grant assistance, construction, modification, or expansion of any pollution control or wastewater treatment system and may submit on a timely basis to the department appropriate recommendations concerning such applications.
[[Image here]]
2.0 The local program shall participate in administration of the department permit system in regard to the following activities in the District and drainage areas as shown in Exhibit 1 attached hereto: Submission of comments concerning construction permits, temporary operation permits, and operation permits for the operation, maintenance, construction, alteration, modification, or expansion of the following type sources as required by Chapter 17-4, Florida Administrative Code:
1. Domestic Waste (including drainage wells, when applicable)
2. Solid Waste
3. Industrial Waste (including animal waste)
4. Dredge and Fill
In addition, the local program shall provide comments concerning letters of acceptance, certifications, and approvals for transmission or collection systems related to the above and drainage wells. However, applications for sources in downstream areas outside the local program boundaries shall be provided to the local program for comment only to the extent practicable.
Duties associated with this responsibility may include engineering and field review and consultation with applicants concerning permits and appropriate certifications. (emphasis added)
In the instant case, the problem arose when DER admittedly failed to furnish Reedy Creek with a copy of the application submitted by Central, which application was for a permit to construct a 1.5 million gallon per day wastewater treatment plant and effluent pumping system, which included discharge of effluent into *315 Bonnett Creek, located within the Reedy Creek District. Reedy Creek was notified of DER’s action through receipt, by United States Mail, of a copy of the permit issued to Central. Within 14 days of receipt of that notice, Reedy Creek sought a formal Section 120.57 hearing. Section 120.57(1), Florida Statutes (1981). DER issued an order to show cause why the petition for formal hearing should not be dismissed since it appeared to be untimely pursuant to Section 403.815, Florida Statutes (1981). On the basis of Reedy Creek’s response to the order to show cause and the allegations in its petition for formal hearing, the matter was forwarded to the Division of Administrative Hearings (DOAH) for a determination as to whether Reedy Creek had waived its right to a formal administrative hearing. At the evidentiary hearing conducted by DOAH, DER introduced evidence that an earlier notice of intended agency action had been presumably mailed more than 14 days prior to Reedy Creek’s request for a formal hearing. The hearing officer ruled that Reedy Creek had waived its right to a formal hearing since it had not timely filed its petition. DER adopted the hearing officer’s findings of fact and conclusions of law.[1]
In this appeal from DER’s order, Reedy Creek denies that it received any notice of intended agency action, denies that it has waived any rights to participate or to request a hearing on the application, and contends that it has been deprived of its opportunity to perform as required by law due to the failure of DER to comply with the agreement between the parties. DER contends that its failure to furnish Reedy Creek with a copy of the application submitted by Central was harmless error since it mailed to Reedy Creek a notice of intended agency action, and Reedy Creek was aware of the proposal and should be considered as having waived its opportunity to participate.
Because we agree with Reedy Creek’s contention that it was entitled to receive the application and to be afforded an opportunity for participation in the permitting process, including the right to a hearing, we find it unnecessary to consider the issue of receipt or nonreceipt of the notice of proposed agency action.[2]
The language of the agreement between Reedy Creek and DER is subject to interpretation in its requirement that Reedy *316 Creek shall be advised of all applications, but in view of the overall intent of the agreement and the purpose to be served thereby, as well as the previous cooperation between DER and Reedy Creek, including the customary furnishing by DER of applications in its district to Reedy Creek, we find that the actions of DER in this case fail to satisfy the minimum requirements of the agreement.
The order below finding waiver is therefore set aside and the cause remanded with directions to afford the required participation. Reedy Creek, acting in this case as a governmental entity, is charged with duties and obligations not inconsistent with those of DER to protect the public interest.[3] Both agencies have a common goal in this respect and are members of the same “team.” The third party to this lawsuit, Central, is not a member of that team and, from the record before, was not responsible for DER’s failure to comply with the agreement with Reedy Creek. Nonetheless, the public interest demands that the procedures designed to effectuate legislative intent be carried out. Accordingly, the cause is remanded for further proceedings consistent herewith. In view of the status of construction and time constraints imposed by a circuit court order, we direct the agency accelerate the hearing and disposition of this proceeding on remand.
ERVIN, C.J., and BOOTH and ZEH-MER, JJ., concur.

. DER stated that its rejection of the conclusions of law in Manasota-88, Inc. v. Department of Environmental Regulation, DOAH Case No. 82-444 (April 23, 1982), did not affect the disposition of this case.

. The hearing officer concluded that as a matter of law:
... The Department -was required to deliver a copy of its intent letter to RCID both because RCID specifically requested to be advised of the proceeding and because the local program agreement between the Department and RCID provides that the Department will notify RCID. The Department established that it properly mailed notice to RCID. There is a presumption that material that has been placed in the mail will be received by the addressee.... While there is evidence that RCID persons who would have needed to see the notice in order to act on it did not receive it, there is no evidence to rebut the presumption that the notice was properly delivered to the RCID post office box.
... RCID was properly provided a point of entry so that it could have requested a formal administrative hearing with respect to the CFU permit application. In order to invoke its remedies, RCID was required to file a petition within fourteen days of receipt of the actual notice, or within fourteen days of publication of the notice in a newspaper.... RCID did not file a petition with fourteen days of receipt of the intent letter, nor within fourteen days of publication of the notice. Accordingly, its right to invoke formal administrative proceedings under Section 120.57(1), Florida Statutes, was waived. Rule 17-1.-62(1 )(b), Florida Administrative Code.
[[Image here]]
... The notice of intent letter was not received by the RCID receptionist. There was no evidence, however, as to the practices of the person or persons who pick up mail at the Lake Buena Vista post office box and deliver it to the RCID offices. The law indulges a presumption that items placed in the mail are delivered. It is thus presumed that the intent letters forwarded RCID by the Department were delivered to the Lake Buena Vista post office box. There is no evidence from which it could be concluded what then happened to the notices other than that they did not ultimately reach RCID’s office.

. Appellee Central points out that Reedy Creek, as a special improvement district, also operates private utilities in competition with appellant.