Mr. Charles J. King Attorney for Tindall Hammock Irrigation and Soil Conservation District 1777 South Andrews Avenue Suite 203 Fort Lauderdale, Florida 33316
Dear Mr. King:
This is in response to your request for an opinion on substantially the following question:
 AT WHAT RATE OF INTEREST IS THE BOARD OF SUPERVISORS OF THE TINDALL HAMMOCK IRRIGATION AND SOIL CONSERVATION DISTRICT AUTHORIZED TO BORROW MONEY?
The Tindall Hammock Irrigation and Soil Conservation District was created by Ch. 27428, 1951, Laws of Florida, for the purpose of draining, reclaiming, and conserving the lands within the district, and for controlling the water and the water tables therein for agricultural and sanitary purposes, and for the public health, convenience, welfare, utility and benefit. In order to implement these purposes, the Board of Supervisors was empowered to levy ad valorem taxes on the land situated within the district as well as "to borrow money on temporary or permanent loans and to issue promissory notes and to incur obligations from time to time. . . ." See, ss. 5 and 7 of Ch. 27428, supra, respectively. In 1986, the Legislature amended the special acts relating to the district and its borrowing power by s. 3, Ch. 86-370, Laws of Florida, to provide as follows:
 The Board of Supervisors of Tindall Hammock Irrigation and Soil Conservation District is hereby authorized and empowered to borrow money on temporary or permanent loans and to issue promissory notes and to incur obligations from time to time upon such terms and at such rates of interest, not exceeding the rate authorized by general law or, if no rate is authorized by general law, at a rate not exceeding 12 percent per year, as the Board may determine for the purpose of raising funds to purchase, install, construct and prosecute to final completion the drainage works and improvements herein authorized, and for the purpose of paying all expenses incident to such work and all expenses necessary or needful in carrying out the purpose of the Act, including, without limiting the generality of the foregoing, cost of right of ways. And the better to enable said Board to borrow and obtain money necessary to carry out and perform the purposes aforesaid, the Board is hereby authorized and empowered to issue in the corporate name of said District negotiable coupon bonds, the aggregate amount of all bonds issued hereunder not to exceed Four Hundred Fifty Thousand Dollars ($450,000.00). (e.s.)
As Ch. 86-370 provides that the board may borrow money "not exceeding the rate authorized by general law," you question what is the maximum rate of interest that general law allows.
I initially note that the special act as amended does not limit the term of such loans for district projects; however, any loan, whether in the nature of bonds, certificates of indebtedness or any form of tax anticipation certificates, with a term in excess of 12 months payable from ad valorem taxes would be controlled by and subject to s. 12, Art. VII, State Const., and would have to be approved by a vote of the electors of the district. See, State v. County of Dade, 234 So.2d 651 (Fla. 1970) (under s. 12, Art. VII, State Const., county could not issue certificates of indebtedness, under s. 135.01, F.S. 1969, to be paid by annual tax levy for ten years, for purchase and improvement of facilities to be used as youth hall and juvenile court complex, without approval by vote of electors).
Restrictions on the rate at which a special district or any other public agency or body could borrow money when authorized to do so were previously contained in ss. 130.012 and 215.685, F.S. 1979. The provisions of these two statutes relating to the limitation of interest rates at which enumerated units of government could borrow money were identical. Bonds, certificates of indebtedness or other obligations of any type or character could bear interests at a rate not to exceed 7.5 percent per annum. See generally, AGO 80-43, concluding that the 7.5 percent per annum interest rate provided for in s. 215.685, F.S. 1979, applied not only to bonds but also to other contractual arrangements of every kind or description entered into by a public body which obligated it to pay a sum of money with interest extending over a period of time. However, the 1980 Legislature enacted Ch. 80-318, Laws of Florida, which repealed s. 215.685, F.S. 1979; and the 1981 Legislature, by the enactment of Ch. 81-321, Laws of Florida, repealed s. 130.012, F.S. 1979.
Chapter 80-318, supra, while repealing s. 215.685, also created s.215.84, F.S., which, among other things, regulates the maximum interest rates allowable on general obligation bonds of public agencies authorized by law to issue bonds. General obligation bonds are defined by s. 215.84(2)(b)1., F.S., to mean "obligations secured by the full faith and credit of a governmental unit or payable from the proceeds of ad valorem taxes of a governmental unit." A bond, in general usage, is a written obligation to pay guarantee of the payment of a stated sum of money on or before a specified day. See, The American Heritage Dictionary of the English Language 149 (1979); Black's Law Dictionary 224 (Rev.4th ed. 1968); 11 C.J.S. Bonds s. 1. The loans authorized in s. 3, Ch. 86-370, Laws of Florida, and the instruments to secure such loans would appear to fall within the general definition of "bonds," and if such obligations are secured by the full faith and credit of the district or payable from the proceeds of ad valorem taxes of the district, to fall within the definition of "bonds" set forth in s. 215.84(2)(b)1., F.S. See, s. 215.84(2)(a), F.S., defining "[g]overnmental unit" to include "any department . . . or other agency of the state, or any county, municipality, or other political subdivision of the state . . . or any board, commission, authority, or other public agency or instrumentality which is now or hereafter authorized by law to issue bonds." See generally, s.1.01(9), F.S., stating that for purposes of the Florida Statutes, where the context will permit, the words political subdivision include "all other districts in this state." I am therefore of the opinion that the written obligations or evidences of indebtedness issued by the board of supervisors of the district to secure the loans provided for in Ch. 86-370 are general obligation bonds within the purview and for the purposes of s. 215.84, F.S., if backed by the full faith and credit of the district or the district's ad valorem tax revenues are pledged to repay the loan. See, AGO 82-15 concluding, among other things, that if obligations of the Monroe County Mosquito Control District securing such loans are secured by the full faith and credit of the district or payable from the proceeds of the district's ad valorem taxes, such obligations may bear interest at a rate not to exceed that prescribed by s. 215.84(3), F.S.
Subsection (3) of s. 215.84, F.S., as amended by Ch. 86-15, Laws of Florida, provides:
 Bonds may bear interest at a rate not to exceed an average net interest cost rate, which shall be computed by adding 150 basis points to The Bond Buyer "20 Bond Index" published immediately preceding the first day of the calendar month in which the bonds are sold. If the interest rate on bonds bearing a floating or variable rate of interest as calculated on the date of the initial sale thereof does not exceed the limitation provided by this subsection, so long as the basis, method, or formula for computing the floating or variable rate does not change during the life of the bonds, subsequent increases in the interest rate in accordance with said basis, method, or formula shall not cause the interest rate on the bonds to violate the limitation provided by this subsection. A certificate by the issuer of the bonds as to the computation of the interest rate in compliance with this requirement shall be deemed conclusive evidence of compliance with the provisions of this subsection. Such maximum rate does not apply to bonds rated by a nationally recognized rating service in any one of the three highest classifications, which rating services and classifications are determined pursuant to rules adopted by the State Board of Administration. (emphasis supplied to added portion)
Thus, loans of the district secured by the full faith and credit of the district or payable from the proceeds of ad valorem taxes of the district are determined by the calculation in subsection (3) of the statute, as amended. However, as provided in subsection (4), "[u]pon the request of a governmental unit, the State Board of Administration may authorize, for a specific issue or reissue of bonds, a rate of interest in excess of the maximum rate prescribed in subsection (3)." See, subsection (4) of s. 215.84
specifying the required supporting data needed to be included in such a request and the criteria the State Board of Administration shall consider in making such a determination. Cf., s. 215.845, F.S., which prohibits any special law providing for the establishment of an interest rate on bonds in excess of the maximum prescribed in s. 215.84(3) or providing any procedure for exceeding such interest rate, which conflicts with that prescribed in s. 215.84(4).
Therefore, I am of the opinion that the Board of Supervisors of the Tindall Hammock Irrigation and Soil Conservation District is authorized to borrow money at a rate of interest not to exceed that prescribed in s. 215.84(3), F.S., where the loan is secured by the full faith and credit of the district or payable from the proceeds of ad valorem taxes of the district.
Sincerely,
Robert A. Butterworth Attorney General
Prepared by:
Craig Willis Assistant Attorney General